ANDERSON, Respondent v. HOTEL CATARACT et al.,
Appellants

(17 N. W.2d 913.)

(File No. 8731. Opinion filed March 9, 1945.)

**Davenport, Evans & Hurwitz,** of Sioux Falls, for Appellants.

**Louis H. Smith,** of Sioux Falls, for Respondent.

SMITH, P. J.   An employee of the Minnehaha Hotel Company died as the result of an assault by a co-employee. The father of the deceased claimed compensation under SDC 64.0402(1).   The Industrial Commissioner concluded that the injury did not arise out of and in the course of the employ-

ment and denied compensation. The circuit court reversed the decision of the commissioner and remanded the claim with directions to enter findings and conclusions for the claimant. The employer and its insurer have appealed. For convenience we refer to the appellants as the employer.

The decedent, Orvin Anderson, and Earl Painter, the workman who committed the assault, were employed by the employer at the Cataract Hotel in Sioux Falls, South Dakota, as engineers. The staff of engineers was made up of these two, and two others. It was their duty to operate the heating plant and generally to maintain and service the plumbing system and mechanical equipment of the hotel. The assault was committed at about 1:30 A. M. January 1st, 1943, in the basement of the hotel. The deceased had gone on duty at 6. P. M. the previous evening to work a twelve-hour shift. Painter had worked the day shift, but had dropped in at the engine or boiler room. Shortly after 1 o'clock a third engineer, who had been directed to help deceased with the New Year's rush of work from midnight on, reported for duty. As he came a bellboy and two soldiers departed. With this preface, we turn to the findings of the commissioner for a statement of the facts surrounding the assault.

"That after departure of said bellboy and said two soldiers, and during the interval aforesaid, there occurred a conversation in which said Orvin Elroy Anderson and said Painter participated, which conversation related to certain phases of the work of said engineers; that said Painter made a disparaging remark about the ability of the said Orvin Elroy Anderson for such work, and to the effect that said Orvin Elroy Anderson did not know much about his work; that said Orvin Elroy Anderson made a statement to the effect that said Painter did not seem to think that he, the said Orvin Elroy Anderson knew much about such work, and that he, the said Orvin Elroy Anderson, was going to quit and go home; that the said Painter in substance and effect responded that the said Orvin Elroy Anderson was not going to go home and that he, the said Painter did not purpose to work the balance of the night; that the said Orvin Elroy Anderson nevertheless insisted that he was going to go home and went to a locker and secured from such locker, his, the

said Orvin Elroy Anderson's coat; that said locker was one of several lockers in said engine room, there being one for each of such engineers and being used by said engineers to leave clothing when changing back and forth from street clothes to working clothes; that upon obtaining such coat the said Orvin Elroy Anderson started to put on the same and while in the process of so doing was assaulted by the said Painter, who inflicted blows about the head of the said Orvin Elroy Anderson; that said Orvin Elroy Anderson fled from said assault and was pursued by said Painter to another room nearby; that said assault by the said Painter and the said blows inflicted therein caused the death of the said Orvin Elroy Anderson, which occurred within a few minutes after said blows were inflicted.

"That it was the intention and purpose of said Orvin Elroy Anderson in going to his locker and obtaining his coat as aforesaid to abandon his employment for his said Employer and to depart from said work.

"That at the time of said argument between the said Orvin Elroy Anderson and said Painter the said Painter was not at his work for said Employer and said assault did not occur at any time while the said Painter was supposed to be at any work for said Employer; that the said Painter at the time of said argument and said assault was merely visiting in said engine room and was not on or about said premises in connection with any duty to said Employer.

"That there was no casual connection between said employment of said Orvin Elroy Anderson by his said Employer and the said injury and said death of the said Orvin Elroy Anderson; that said assault by said Painter was not caused by said discussion with reference to said work; that the said assault on the part of the said Painter was motivated by the said Orvin Elroy Anderson's announced intention of quitting his work and the aforesaid positive steps on the part of the said Orvin Elroy Anderson so to do; that it was no part of the duty of the said Painter to said Employer to prevent said Orvin Elroy Anderson from leaving such work; that said Painter at said time was not in the position of an Employee but in the position of a stranger."

■ ■ An injury for which compensation may be awarded under the Workmen's Compensation Act is defined as "only injury by accident arising out of and in the course of the employment, * * *." SDC 64.0102(4). That the injury suffered by deceased was "by accident" is conceded. It was a harm received on a single occasion which the workman did not expect. See Johnson v. La Bolt Oil Co., 62 S. D. 391, 252 N. W. 869; Fenton v. Thorley & Co., Ltd., A. C. 443, 5 W. C. C. 1; Kelly v. Trim Joint District School, [1914] A. C. 667, 111 L. T., N. S., 306, 30 Times L. R. 452, Ann. Cas. 1915A, 104. Neither does the employer question that in certain circumstances an injury through assault by another employee of the employer falls within the cited definition. 71 C. J. 685; City of Chicago v. Industrial Commission, 292 Ill. 406, 127 N. E. 49, 15 A. L. R. 588; 21 A. L. R. 758; Peavy v. C. W. Merydith Contracting Co., 112 Kan. 637, 211 P. 1113, 29 A. L. R. 437; Anderson v. Security Bldg. Co., 100 Conn. 373, 123 A. 843, 40 A. L. R. 1122; Boek v. Wong Hing, 180 Minn. 470, 231 N. W. 233, 72 A. L. R. 110; and Scholl v. Industrial Commission, 366 Ill. 588, 10 N. E. 2d 360, 112 A. L. R. 1258.

The first contention is that the undisputed facts do not warrant a legal conclusion that decedent suffered an injury "arising out of" his employment. In arguing that the evidence fails to establish the requisite causal relation between the injury and the employment, the employer looks to the immediate circumstances and points out that (1) the quarrel did not involve a difference over the performance of a duty to the employer; it resulted because decedent was deserting his post; (2) an existing work problem was not involved; the discussion was about the capabilities of the decedent; (3) the participants in the altercation were workmen of equal rank; and (4) the assault was by one who, because not then on duty, occupied the position of a stranger to the employment. We have concluded that, looking beyond the facts urged by the employer, a rational mind can trace the injury to a risk inherent in the employment, and consequently, within the legislative contemplation, it rose from the employment.

In a recent case dealing with an assault made upon an employee while in the course of his employment under cir-

cumstances excluding every other motive but robbery, in writing for the Minnesota court, the late Mr. Justice Stone said:

"It is significant that in defining compensable accident the workmen's compensation law makes no mention of cause or causation as such. Impliedly, it thereby rejects or at least modifies the standard of proximate causation determinative in tort litigation. Therefore, care must be exercised lest long judicial habit in tort cases allows judicial thought in compensation cases to be too much influenced by a discarded or modified factor of decision.

"It is apparent that the new standard 'arising out of and in the course of' employment does not require that the latter be the proximate cause of injury. If the legislature had meant that, it would have said so. The words, 'in the course of' impose a requirement in respect to time and place. The phrase 'out of' expresses a factor of source or contribution rather than cause in the sense of being proximate or direct.

"Because of the intervening wrongful act of third parties or some such extrinsic contribution. the employment may not be the proximate cause. But it may be nonetheless so much (the) source of the event that the latter in a very real and decisive sense arises out of the employment, much as a plant arises from the soil although growth would have been impossible but for the seed. So it is enough that injury follows 'as a natural incident of the work * * * as a result of the exposure occasioned by the nature of the employment.' "

An award of compensation was ordered. Hanson v. Robitshek-Schneider Co. et al., 209 Minn. 596, 297 N. W. 19, 21.

In Leonbruno v. Champlain Silk Mills, 229 N. Y. 470, 128 N. E. 711, 13 A. L. R. 522, a case dealing with an injury to an eye inflicted by a co-employee throwing an apple, the late Mr. Justice Cardozo wrote: "Whatever man and boys will do, when gathered together in such surroundings, at all events if it is something reasonably to be expected, was one of the perils of his service. * * * The claimant was injured, not merely while he was in a factory, but because he was in a factory, in touch with associations and conditions insepar-

able from factory life. The risks of such associations and conditions were risks of the employment."

In Hartford Accident & Indemnity Co. v. Cardillo, 72 App. D. C. 52, 112 F.2d 11, 16, a work problem was not involved, yet the claim for compensation for an injury resulting from an assault by an employee of higher rank was sustained. In writing for the court, Mr. Justice Rutledge deals with the cases urged upon us by the employer, and in an exhaustive opinion reinforces the logic of the courts we have quoted. In contrasting the holdings of other courts, he wrote:

"One view limits compensable causation to quarrels relating directly to the work. It disconnects the precipitating incident from the working environment, though that alone may have produced it. So isolated, its immediate relevance to the work becomes the determinative consideration. Momentary lapses from duty, as in horseplay, kidding and teasing, which often explode into bursts of temper and fighting become 'departures from the work,' 'independent, intervening causes' or 'purely personal matters.' Their immediate irrelevance overcomes and nullifies the part played by the work in bringing the men together and creating the occasion for the lapse or outburst. The other view rejects the test of immediate relevancy of the culminating incident. That is regarded, not as an isolated event, but as part and parcel of the working environment, whether related directly to the job or to something which is a by-product of the association. This view recognizes that work places men under strains and fatigue from human and mechanical impacts, creating frictions which explode in myriads of ways, only some of which are immediately relevant to their tasks. Personal animosities are created by working together on the assembly line or in traffic. Others initiated outside the job are magnified to the breaking point by its compelled contacts. No worker is immune to these pressures and impacts upon temperament. They accumulate and explode over incidents trivial and important, personal and official. But the explosion point is merely the culmination of the antecedent pressures. That it is not relevant to the immediate task, involves a lapse from duty, or contains an element of

volition or illegality does not disconnect it from them nor nullify their casual effect in producing its injurious consequences. Any other view would reintroduce the conceptions of contributory fault, action in the line of duty, nonaccidental character of voluntary conduct, and independent, intervening cause as applied in tort law, which it was the purpose of the statute to discard. It would require the application of different basic tests. of liability for injuries caused by volitional conduct of the claimant and those resulting from negligent action, mechanical causes and the volitional activities of others.

"The limitation, of course, is that the accumulated pressures must be attributable in substantial part to the working environment. This implies that their casual effect shall not be overpowered and nullified by influences originating entirely outside the working relation and not substantially magnified by it. Whether such influences have annulling effect upon those of the environment ordinarily is the crucial issue. The difference generally is as to the applicable standard. It is not, as is frequently assumed, the law of, independent, intervening agency' applied in tort cases. It can not be prescribed in meticulous detail, but is set forth in the statute, not only in the board presumptions created in favor of compensability, but more explicitly in the provision by which Congress has expressed clearly its intention concerning the kinds of acts which bar recovery when done by the claimant. The provision is: 'No compensation shall be payable if the injury was occasioned solely by the intoxication of the employee or by the willful intention of the employee to injure or kill himself or another.' "

And see Penker Const. Co. v. Cardillo, 73 App. D. C. 168, 118 F.2d 14; and Ackerman v. Cardillo, 78 U. S. App. D. C. 310, 140 F.2d 348.

Such a construction of our statute was foreshadowed by Stratton v. Interstate Fruit Co., 47 S. D. 452, 199 N. W. 117, 119, wherein it was written, "If the injury, or the risk of injury, is incidental to the employment, the right to compensation follows." It reads the words "arising out of * * * the employment" according to their natural and ordinary

sense, and furthers the broad purposes which motivated the Workmen's Compensation Act. See 71 C. J. 753.

■ "In a very real and decisive sense" the injury of decedent arose out of his employment. But for that employment and the presence of decedent at his post of duty in the engine room, the assault would not have been made. He was not the aggressor. Painter's opinion of deseased's capability was generated by their association in the employment, and his disparaging statements, which set forces in motion culminating in the assault, were directed at deceased as an employee. That deceased's reaction to those taunts was to announce an intention to quit his employment is, we think, without significance in determining whether a compensable injury was inflicted. Discharge by the employer, and quitting by an employee, are but incidents of all employments. A discharged employee is allowed a reasonable time in which to leave the premises of his employer. Zygmuntowicz v. v. American Steel & Wire Co., 240 Mass. 421, 134 N. E. 385; W. B. Davis & Son v. Ruple, 222 Ala. 52, 130 So. 772; 71 C. J. 420. We hold that an employee who quits remains in the course of his employment until afforded a reasonable opportunity to leave the employer's premises. Gardner v. Stout, 342 Mo. 1206, 119 S. W.2d 790.

It follows, we are of the opinion, that the accidental injury of the deceased arose out of and in the course of his employment.

The remaining attack upon the judgment below is under an assignment questioning the sufficiency of the evidence to show decedent was able to provide support for his father, the claimant.

■■ The pertinent words of the applicable statute read: "* * * if the employee leaves any parent * * * whom he was under legal obligation to support at the time of his injury, * * *." SDC 64.0402(1). The requirements of this statute are satisfied if it be shown that the workman was legally bound, at the time of the injury, to support claimant under SDC 14.0312, reading in part as follows: "It is the duty of the * * * children, of any poor person who is unable to maintain himself by work, to main-

tain such person to the extent of their ability." Schmidt v. Clark County, 65 S. D. 101, 271 N. W. 667. And see Schwan v. Premack et al., 70 S. D. 113, 17 N. W.2d 911. It is conceded that claimant is a "poor person" within the terms of this statute. Within the legislative intention, we think, it is enough to satisfy the requirements of SDC 64.0402(1) if it be shown that the workman was under a legal obligation to contribute to the support of his parent.

The evidence establishes that decedent, a man of 41 years, was working and drawing wages at the time of his death. He had earned $67.10 during the preceding three weeks. A witness testified that he had earned "good wages" while working in Chicago previous to 1940. His earnings appear by the evidence to have been available for the support of himself and his father. That this evidence shows little ability to help his father is obvious. Nevertheless, we think a finding that deceased was without ability to provide for his aged father would be against the clear weight of the evidence. Under the plain terms of SDC 14.0312, to the full extent of his meager ability, the deceased was bound to provide for claimant. We hold the contention untenable.

The judgment is affirmed.

All the Judges concur.