Unified Judicial System

 

 
 Formatting provided courtesy of State Bar of South Dakota and South Dakota Continuing Legal Education, Inc.
222 East Capitol Ave.
Pierre, SD 57501-2596 
THE SCHLEUTER COMPANY, INC.,
Babson Credit Plan, Inc., and Babson Brothers, Inc.,
Plaintiffs and Appellants,
v.
DONALD J. SEVIGNY,
Diane Sevigny, Bank of Hoven, a Corporation,
Clarence J. Frost, Anna Marie Frost, Inman-McDowell, Inc.,
Defendants,
v.
Hoven Industries, Inc., and John F. Cedarberg, III,
Defendants and Appellees.
and John F.Cedarberg, III,
Cross-Plaintiff and Appellee,
v.
Donald J. Sevigny and Diane Sevigny,
Cross-Defendants.
[1997 SD 68, __ NW2d __]
South Dakota Supreme Court
Appeal from the Sixth Judicial Circuit, Potter County, SD
Hon. James W. Anderson, Judge
#19820 â Reversed
Jay R. Gellhaus, Lonald L. Gellhaus
Williams, Gellhaus & Gerdes, Aberdeen, SD
Attorneys for Appellants.
Craig E. Smith, Neumayr & Smith, Gettysburg, SD
Attorneys for Appellees.
Argued Apr 30, 1997; Opinion Filed Jun 11, 1997
SABERS, Justice.
 [Â¶1] This dispute concerns priority in real property between creditorsâ judgment liens and buyerâs unrecorded contract for deed. The trial court held that buyer had a superior interest in the property by virtue of mortgageeâs assignment of mortgage. We reverse.
FACTS
 [Â¶2] In 1978, Donald Sevigny d/b/a Sevigny Farm Service (Sevigny) erected a building on a small parcel of land in Hoven, South Dakota, from which he operated his business. The Bank of Hoven (Bank) held a first mortgage on this property, which was recorded May 14, 1979 with the Potter County Register of Deeds. Sevignyâs financial problems led him to enter into an agreement to sell the property. On May 15, 1985, Sevigny, Bank, and John Cedarberg (Cedarberg) entered into a contract for deed according to which Cedarberg would purchase Sevignyâs property for $69,000.00. Neither the contract for deed nor a memorandum thereof were recorded with the Register of Deeds. Cedarberg paid $1,000.00 downpayment and agreed to make 95 monthly payments of $1,003.39. [fn1] The parties agreed further:

That contemporaneously with this Agreement, the Buyer and the Bank of Hoven intend to enter into an Escrow Agreement whereby the sums due and payable under this Agreement are to be paid in escrow to the Bank of Hoven, and the Bank of Hoven is to apply said sums to the indebtedness of the Sellers, and that when final payment under this Contract is made in full, the Bank of Hoven shall satisfy said mortgage, thereby releasing the above described real estate from any lien under said mortgage and that said Escrow Agreement is a condition precedent to this Contract for Deed.
The escrow agreement was executed at the same time as the contract for deed, and provided that

when payments are made in full under [the contract for deed] ... the Bank agrees to release and satisfy the above described real estate mortgage and to furnish Purchaser with the Warranty Deed which the Bank of Hoven shall be holding in escrow until final payment is made.
Neither Sevigny nor Cedarberg retained legal counsel in this transaction. David Von Wald, Bankâs attorney, handled the matter. The contract for deed was not recorded with the Register of Deeds until March 16, 1993, nearly 12 years after it was executed.
 [Â¶3] Sevigny testified on cross-examination that he also made payments to the escrow account:

A: I was making payments to this escrow account also because I had a part of that debt which was equipment and other items.
...
Q: And then am I correct, though, that the bank was willing to accept less than full payment for releasing their mortgage from you?
A: To be truthful, this I do not remember. I had no knowledge of it at the time. The only thing he had stated to me, there would be a balance left over at the time Mr. Cedarberg would be done paying his portion which was my obligation.
 [Â¶4] Plaintiffs took default judgments against Sevigny for debts accrued in his business. Schleuter Co., Inc.âs judgment for $542.86 was docketed with the Potter County Clerk of Courts January 6, 1987. [fn2] Babson Credit Plan, Inc. and Babson Brothers, Inc. each took separate judgments, $3,725.76 and $9,955.45, respectively; both were docketed with the Clerk of Courts November 22, 1988. [fn3]
 [Â¶5] A notation on the 1985 Potter County tax notice for the property states:

4-23-86
Dear Mr. Cedarberg,
I am bringing it to your attention that in checking with the Register of Deeds we find there is no deed filed in your name for this description.
Sincerely [Potter County Treasurer]
The testimony shows that John Van Horne (then president of Bank) was contacted by Cedarbergâs employee, who was told by Van Horne "that he would take care of it." All future tax notices included Cedarberg and Sevignyâs names; however, the contract for deed remained unrecorded.
 [Â¶6] In 1993, Cedarberg was arranging equipment financing with Cargill, Inc., which conducted a title search on the Hoven property. Cargill discovered the title was clouded by plaintiffsâ liens, as well as other judgment liens, [fn4] and informed Cedarberg. Cargill also gave him a copy of the lien and title search, which was dated March 4, 1993. Cedarberg recorded the contract for deed March 16, 1993 with the Register of Deeds.
 [Â¶7] In a summons and complaint dated September 22, 1994, the judgment creditors brought an action to foreclose the liens. Bank assigned the note and the mortgage to Cedarberg on October 26, 1994 and it was recorded with the Register of Deeds November 10, 1994. Bank purportedly reserved, or excluded from the assignment, $13,528.92 plus interest still owed by Sevigny. Cedarberg counterclaimed to quiet the title to the property and cross-claimed against Sevigny for the amount of the judgment liens if they were found superior to Cedarbergâs interest. [fn5] The trial court ruled for Cedarberg and the judgment creditors appeal.
 [Â¶8] Whether Under These Circumstances, Cedarberg Takes Free Of Judgment Liens Filed Against The Property Of His Contract For Deed Seller.
 [Â¶9] The proper resolution of this case centers upon the judgment lien statute and the recording statutes. "The construction of a statute is a question of law." First Dakota Title v. Codington County, 1996 SD 125, Â¶4, 554 NW2d 666, 667 (citations omitted). Conclusions of law are reviewed de novo. Id.
 [Â¶10] The plaintiffs in this case (hereinafter Schleuter) became judgment lien creditors by virtue of SDCL 15-16-7, which provides:

When a judgment has been docketed with a clerk of the circuit court, it shall be a lien on all the real property, except the homestead, in the county where the same is so docketed, of every person against whom any such judgment shall be rendered, and which he may have at the time of the docketing thereof in the county in which such real property is situated, or which he shall acquire at any time thereafter, for ten years from the time of docketing the same in the county where it was rendered, and no judgment shall become a lien on real property as herein provided unless it be docketed in the county where the land is situated.
When these judgments were docketed, they became valid against Sevignyâs property, subject only to Bankâs first mortgage, which was recorded first. SDCL 44-2-1 ("Other things being equal, different liens upon the same property have priority according to the time of their creation.").
 [Â¶11] While the unrecorded contract for deed was binding on the parties, i.e., Cedarberg, Bank, and Sevigny, it had no effect on the judgment lien creditors because it was not recorded. See SDCL 43-28-17:

Every conveyance of real property other than a lease for a term not exceeding one year is void as against any subsequent purchaser or encumbrancer including an assignee of a mortgage, lease, or other conditional estate of the same property, or any part thereof in good faith and for a valuable consideration whose conveyance is first duly recorded. The term "conveyance" as used in this section, embraces every instrument in writing by which any estate or interest in real property is created, aliened, mortgaged, or encumbered or by which the title to any real property may be affected, except wills and powers of attorney.
The effect of this statute is to protect subsequent purchasers or encumbrancers, [fn6] such as Schleuter, from unrecorded conveyances. "As to them, an unregistered deed or mortgage is in all respects as if it did not exist." 66 AmJur2d Records & Recording Laws Â§161 (1973).

The purpose and object of our system of laws for the recording of written instruments affecting the title to real estate cannot be misunderstood. It is to give notice in the manner most likely to prove efficacious, to all who are or may become interested, of such contracts and agreements between parties as may affect the title to such real estate, or the rights and liabilities of parties who may deal in or with reference to it.
Merrill v. Luce, 6 SD 354, 360, 61 NW 43, 45 (1894) (construing the forerunner to SDCL 43-28-17, which contains virtually identical language, and holding that recorded mortgage was superior in interest to prior unrecorded mortgage); see also Merrill v. Hurley, 6 SD 592, 62 NW 958 (1895) (holding against same plaintiff as in Luce, supra, and finding again that her unrecorded mortgage was inferior to later, recorded mortgage). "Public policy dictates that judgment creditors must be able to rely on the title shown in public records." Nussbaumer v. Fetrow, 556 NW2d 595, 599 (MinnCtApp 1996) (discouraging failure to record and noting that it leads to expensive litigation and loss of property).
 [Â¶12] When Cedarberg finally recorded his deed, it was subject to the judgment liens which took priority and "first place in line" when the mortgage was extinguished. [fn7] The lien attached to the real property prior to the time Sevignyâs interest was extinguished. See SDCL 15-16-7, reproduced supra at Â¶10 (judgment becomes lien upon docketing). Therefore, the transfer of the deed to Cedarberg had no effect on the validity of the judgment liens. Accordingly, Cedarberg recorded his deed subject to the liens. Compare State ex rel Depât of Revenue v. Karras, 515 NW2d 248, 252 (SD 1994), where this court held that the taxpayerâs deed to his wife was void as against the Department because the deed was recorded after the sales tax lien was recorded.
 [Â¶13] While the foregoing discussion is dispositive of this case, we note that the trial court erred in holding, as a matter of law, that Cedarberg took a first and prior lien by virtue of his payments under the contract for deed and by Bankâs assignment of the mortgage.
 [Â¶14] First, according to Cedarberg, the warranty deed was delivered to him when he made the last payment under the contract for deed. Although the record is unclear when he received the deed, the contract for deed states that the last payment was due April 9, 1993, and that Bank would satisfy the mortgage and furnish Cedarberg with the warranty deed upon final payment. This deed was apparently never recorded with the Register of Deeds and Bank did not record a satisfaction of mortgage, as it impliedly agreed to do under the contract for deed.
 [Â¶15] The legal effect of paying the money under the contract and receiving the deed was the extinguishment of the note and mortgage. "[T]he general rule is that a deed executed in pursuance of a contract for the conveyances of real property supersedes and merges all prior negotiations or contracts relating to it[.]" Hammerquist v. Warburton, 458 NW2d 773, 776 (SD 1990) (citations omitted). The exceptions to this rule are "the existence of fraud or mistake or collateral contractual provisions or agreements which are not intended to be merged in the deed." Id. There is no evidence of fraud or mistake concerning the contract for deed. Neither the contract for deed nor its companion escrow agreement contain any agreement or provision indicating an intent contrary to merger. "All writings that are executed together as part of a single transaction are to be interpreted together ... [w]hen two or more instruments are executed at the same time by the same parties, for the same purpose and as part of the same transaction, the court must consider and construe the instruments as one contract." Baker v. Wilburn, 456 NW2d 304, 306 (SD 1990) (citations & emphasis omitted). The construction of a contract is a question of law which we review de novo. Alverson v. Northwestern Natâl Cas. Co., 1997 SD 9, Â¶5, 559 NW2d 234, 235 (citation omitted). The plain language of both documents manifests the partiesâ intent that the mortgage merge in the deed upon Cedarbergâs payment of the purchase price. See supra Â¶2; see also SDCL 43-25-16 ("An instrument purporting to be a grant of real property, to take effect upon condition precedent, passes the estate upon the performance of the condition."). Because the note and the mortgage merged in the deed, Bank had no interest which it could assign. The deed was an absolute conveyance, not a mortgage requiring foreclosure.
 [Â¶16] Second, even if we assume there was still a mortgage to assign, it appears Bank "assigned" nothing, because it reserved for itself any remaining debt due from Sevigny under the note. See, e.g., Barbour v. Finke, 47 SD 644, 648, 201 NW 711, 712 (1924) ("It is the settled rule of this jurisdiction that a mortgage is merely an incident to the note which it secures."); Jones v. Jones, 20 SD 632, 638, 108 NW 23, 25 (1906) (in order to show that a deed is a mortgage and not an absolute conveyance, "a debt or some other obligation to be secured must exist at the time of the transaction[.]"); Miller v. Berry, 19 SD 625, 630, 104 NW 311, 313 (1905) ("[A]n assignment of a mortgage without transferring the note or indebtedness which the mortgage is given to secure is a nullity."); 55 AmJur2d Mortgages Â§1002 (1996) ("[A]ttempted assignment of a mortgage, apart from the debt, is a nullity, a mortgage by itself not being a fit subject for assignment.").
 [Â¶17] Cedarberg argues that even if he did not achieve priority status by the assignment, he is subrogated to Bankâs interest via SDCL 44-3-6, which provides:

One who has a lien inferior to another upon the same property has a right to be subrogated to all the benefits of the superior lien when necessary for the protection of his interests upon satisfying the claim secured thereby.
Cedarbergâs interpretation of this statute would eviscerate the recording system. See 59 CJS Mortgages Â§279 (1949):

Where a junior encumbrancer, for his own protection, pays off the senior lien on the property, it is not necessarily an extinguishment of the elder lien, but he will be entitled to an assignment of it or to be subrogated to the rights of the original holder of such a senior lien, and to its full amount, irrespective of the sum he may have paid for it, and notwithstanding the lien had been discharged of record. If there are intervening liens, however, he cannot tack his third or later encumbrance to the first; he will succeed to the rights of the first mortgagee, but only in respect of the debt secured by such mortgage, and cannot take satisfaction also of his inferior lien to the prejudice of such intervening lienors.
(Emphasis added & footnotes omitted). Furthermore, as already noted, the mortgage was extinguished upon payment by Cedarberg and subsequent conveyance of the deed; there are simply no rights to which Cedarberg could be subrogated.
 [Â¶18] Finally, in Cedarbergâs second notice of review issue, he argues this court should employ the doctrine of equitable conversion, which provides

once parties have executed a binding contract for the sale of land, equitable title vests in the purchaser and the vendor holds legal title only as security for payment of the balance of the purchase price.
Blackâs Law Dictionary 538 (6th ed. 1990). Cedarberg argues that the effect would be to prevent a judgment lien from attaching upon docketing. We disagree. The doctrine would affect rights between the vendor and vendee, but would not affect these outside parties and would not circumvent the Legislatureâs intent, as expressed in SDCL 15-16-7, that a judgment becomes a lien when docketed.
 [Â¶19] The judgment is reversed and remanded to the trial court to enter judgment of foreclosure in favor of the judgment creditors.
 [Â¶20] MILLER, Chief Justice, and AMUNDSON, KONENKAMP and GILBERTSON, Justices, concur.
Footnotes
fn1 . There is no dispute that Cedarberg honored this agreement and made all payments.
fn2 . At the time Schleuter took its judgment, the amount due under the contract for deed exceeded $57,000.00.
fn3 . At the time the Babson corporations took their judgments, the amount due under the contract for deed exceeded $43,500.00.
fn4 . Cedarberg testified he settled with the other judgment creditors before this action arose.
fn5 . The trial court originally granted Schleuterâs motion for summary judgment against Cedarberg and Hoven Industries, Cedarbergâs corporation. It denied the two Babson corporationsâ similar motions, stating there were genuine issues of material fact whether their agent was aware of Cedarbergâs interest, citing SDCL 43-28-14, which provides: âAn unrecorded instrument is valid as between the parties thereto and those who have notice thereof.â For some reason, notice of entry of judgment was never filed, and upon Cedarbergâs motion for new trial, the proceedings leading to this appeal took place. In its conclusions of law, the trial court vacated the summary judgment, stating it was based on an error of law.
fn6 . "The term âencumbrancesâ includes taxes, assessments, and all liens upon real property." SDCL 43-25-19.
fn7 . Cedarbergâs first notice of review issue, that Schleuter is barred by laches, is without merit. A judgment lien is valid for 10 years from docketing, SDCL 15-16-7, and may be renewed for an additional ten years. SDCL 15-16-33 & -35. Schleuter retained the right to foreclosure so long as the action was brought within the 10 years, or 20 years if properly renewed. Cf. Muhlenkort v. Union Cty. Land Trust, 530 NW2d 658, 662 (SD 1995) (holding that plaintiff no longer had a valid lien in existence upon which to foreclose when action was commenced two years past the 10-year deadline and judgment was not renewed).
Likewise, Cedarbergâs argument that Schleuter had notice of Cedarbergâs interest in the property is meritless. Although SDCL 43-28-14 provides, "An unrecorded instrument is valid as between the parties thereto and those who have notice thereof," there was no proof of notice. The trial court held as a matter of law that the plaintiffs had no notice, either actual or constructive, of the contract for deed between Sevigny and Cedarberg. Cedarberg fails to demonstrate that this holding was in error.