1999 SD 90

CANAL INSURANCE COMPANY,
Plaintiff and Appellee,

v.

Morris ABRAHAM, Defendant
and Appellant,

and

John Neeman, Defendant.

No. 20746.

Supreme Court of South Dakota.

Considered on Briefs April 27, 1999.

Decided July 21, 1999.

Mark J. Welter of Woods, Fuller, Schultz & Smith, Sioux Falls, South Dakota, for plaintiff and appellee.

Scott G. Hoy of Scott Hoy and Associates, Sioux Falls, South Dakota, for defendant and appellant.

VON WALD, Circuit Judge

[¶ 1.] Morris Abraham (Abraham) was injured in an automobile accident. In this declaratory judgment action, the trial court found that there was no coverage for the accident under the insurance policy issued by Canal Insurance Company (Canal). We affirm.

## FACTS

[¶ 2.] Canal issued a policy of insurance to the named insured John Neeman (Neeman). The policy was for basic automobile liability insurance and covered the period of December 16, 1994, to December 16, 1995. The scheduled vehicle under the policy was a 1988 GMC truck owned by Neeman with designated use for commercial purposes.

[¶ 3.] The policy had several exclusions or endorsements attached, including an occupant hazard exclusion,[1] underinsured motorist coverage,[2] and a truckman's endorsement.[3] The policy stated that Canal "will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury." Contained in the policy was language as follows: "None of the following is an insured: ... any person while engaged in the business of his employer with respect to bodily injury to any fellow employee of such person injured in the course of his employment." The policy also excluded coverage as to "any obligation for which the insured ... may be held liable under any worker's compensation ... law."

[¶ 4.] Neeman was president of Country Side Tires, Inc., a business incorporated in South Dakota since January 1995. The company primarily engaged in the business of buying, repairing, selling, and installing vehicle tires. Neeman and his wife were the sole shareholders of the corporation. Neeman was also an employee of the business and received a salary. Abraham was a full-time employee for Country Side Tires and worked fixing and changing tires.

[¶ 5.] Neeman loaned his truck to Country Side Tires for use in the business. The corporation paid for the maintenance, repairs, tires, and fuel for the truck. The truck was also used as collateral for a bank loan to buy tires for the corporation.

[¶ 6.] On September 21, 1995, Neeman and Abraham drove the truck to Missouri to pick up a load of tires for Country Side Tires, Inc. Abraham went along to help load the tires and was paid for eight hours of work. This was the first time Abraham had been required to go off the business premises for his job since he began working for the company three weeks earlier. Abraham drove the truck down to Missouri and Neeman drove back to South Dakota. On the return trip, they were involved in a one-vehicle accident on Inter-

---

1. The exclusion stated in part: "[the policy] does not apply to Bodily Injury including death at any time resulting therefrom, sustained by any person while in or upon, entering or alighting from the automobile."

2. The uninsured and underinsured motorist insurance coverage had the statutory limits of $100,000 per person and $300,000 per occur-

rence. The regular liability limit of the policy was $500,000.

3. This exclusion stated in part: "no coverage is extended to any person, firm or organization using the described automobile pursuant to any lease, contract of hire, bailment, rental agreement, or any similar contract."

state 29 near Alcester, South Dakota, when Neeman fell asleep while driving. Abraham was asleep in the passenger seat at the time of the accident and sustained injuries when the truck rolled.

[¶ 7.] Canal filed a declaratory judgment action on January 29, 1996, asking the trial court to find that no liability coverage existed under the policy of insurance. Neeman disagreed and claimed that the policy issued by Canal covered the injuries Abraham incurred in the accident.[4] Both sides agree that Country Side Tires had elected not to operate under the South Dakota worker's compensation provisions found in SDCL Title 62.

[¶ 8.] The matter went to trial on July 23, 1998, and the trial court ruled in favor of Canal, holding there was no coverage under Canal's policy for the accident. The trial court found that Abraham and Neeman were fellow employees of Countryside Tires, Inc. at all times material to this matter. The trial court also found that Abraham and Neeman were operating in the scope of their employment at the time of the accident. The court denied Abraham's motion for reconsideration. Abraham appeals and raises the following issues:

> Did the trial court err in applying South Dakota worker's compensation remedies under the facts of this case?
>
> Is Abraham entitled to the benefit of underinsured motorist coverage under this policy?
>
> Did the trial court err in not applying SDCL 58–20–12 to this claim?
>
> Are the exclusions to coverage under Canal's policy void as against public policy, or alternatively applicable?

## STANDARD OF REVIEW

[¶ 9.] Our standard of review in declaratory judgment actions is well established:

In declaratory judgment actions, our standard of review of factual questions is clearly erroneous. *Northwestern Bell Telephone Co. v. Stofferahn,* 461 N.W.2d 129, 134 (S.D.1990). Conversely, questions of law are reviewed de novo, *Schuck v. John Morrell & Co.,* 529 N.W.2d 894, 896 (S.D.1995), as are mixed questions of law and fact. *Paulson v. Black Hills Packing Co.,* 1996 SD 118, ¶ 7, 554 N.W.2d 194, 196. We also review deposition testimony de novo. *Tischler v. UPS,* 1996 SD 98, ¶ 23, 552 N.W.2d 597, 602; *Hendrix v. Graham Tire Co.,* 520 N.W.2d 876, 879 (S.D. 1994).

*PEPL v. Winger,* 1997 SD 77, ¶ 65, 566 N.W.2d 125, 127.

[¶ 10.] In addition, interpretation of contracts is a matter of law, and thus we also review them de novo. *Schleuter Co., Inc. v. Sevigny,* 1997 SD 68, ¶ 15, 564 N.W.2d 309, 313; *Olson v. U.S. Fidelity and Guar. Co.,* 1996 SD 66, ¶ 6, 549 N.W.2d 199, 200; *Estate of Thomas v. Sheffield,* 511 N.W.2d 841, 843 (S.D.1994).

## DECISION

[¶ 11.] **The trial court did not err in applying South Dakota worker's compensation laws.**

[¶ 12.] The first question in our analysis is whether Abraham was acting in the scope of his employment at the time of the accident; if so, then Abraham's injuries may be compensable under South Dakota worker's compensation statutes. SDCL 62–3–2; *Roberts v. Stell,* 367 N.W.2d 198 (S.D.1985). Abraham argues that he was not acting in the scope of his employment when he was injured; thus, worker's compensation does not apply and the insurance policy issued by Canal should provide Abraham relief.

---

4. There is an underlying action to this case. Abraham has brought a separate negligence suit against Neeman and is seeking damages. This declaratory judgment action is merely to establish what, if any, duties exist on Canal's part toward Neeman or Abraham or the extent of coverage that exists under the policy issued by Canal in regard to either Neeman or Abraham.

For an injury to arise out of "the employment," it is necessary and sufficient that there be a causal connection between the injury and the employment, but the employment need not be the direct or proximate cause of injury, it being sufficient if the accident had its origin in the hazard to which the employment exposed the employee while doing his work. *Anderson v. Hotel Cataract*, 70 S.D. 376, 17 N.W.2d 913 [1945]; *Bergren v. S.E. Gustafson Construction Co.*, 75 S.D. 497, 68 N.W.2d 477 [1955]. The words "in the course of" refer to the time, place and circumstances under which the accident took place. The contents of the statute do not limit the application to the periods during which an employee is actually engaged in the work that he is hired to perform. . . . In other words, an employee is within the course of his employment if what he is doing is naturally related or incidental to his employment or he is doing that which his contract of employment expressly or impliedly authorizes. *Wilson v. Dakota Light & Power Co.*, 45 S.D. 175, 186 N.W. 828 [1922]; *Jacobson v. Strong & Waggoner*, 66 S.D. 552, 287 N.W. 41 [1939]; *Lang v. Board of Education*, 70 S.D. 343, 17 N.W.2d 695 [1945].

*Krier v. Dick's Linoleum*, 78 S.D. 116, 118–19, 98 N.W.2d 486, 487–88 (1959); *see also, PEPL v. Winger*, 1997 SD 77, 566 N.W.2d 125; *Bearshield v. City of Gregory*, 278 N.W.2d 164, 166 (S.D.1979).

[¶ 13.] We have previously decided several cases factually similar to the matter at hand. In *Pickrel v. Martin Beach, Inc.*, 80 S.D. 376, 124 N.W.2d 182 (1963), the employee had started his employment eleven weeks prior to the accident and was paid based on an eight hour day, six days a week. The employer construction company was based in Huron and primarily built power lines over a wide area, thus maintaining work crews at various project locations. The employer provided bi-weekly transportation to and from the worksites in company-owned vehicles. At the time of the accident, the employee was returning to Huron from a worksite in Kimball, approximately 86 miles away, in the vehicle provided by the employer. Usually, these trips back and forth from the worksites were also used to transport equipment and materials; but, on the trip in which the employee was killed, they were not transporting anything for the employer, nor had they been asked to do so. We found the employee to be acting in the scope of his employment at the time of the accident. *Pickrel*, 80 S.D. at 378, 124 N.W.2d at 183.

[¶ 14.] The facts in *Krier v. Dick's Linoleum*, 78 S.D. at 118, 98 N.W.2d at 486, were also somewhat similar to Abraham and Neeman's situation. The employee, based out of Pierre, was working on a project in Chamberlain and had to stay overnight. The employer had given him money for meals and expenses. After completing work that evening, the employee drove the employer's truck to a steakhouse a couple miles outside of town to eat dinner. The dining location was the employee's personal and independent choice as the employer had not told him where to eat. On the way back to town after dinner, the employee was injured in a vehicle accident.

[¶ 15.] The controlling factor in our analysis in *Krier* was "whether the claimant was engaged in doing something which he might reasonably be expected to do while in the performance of his duties." We found it could not "be held that he stepped aside from his employment to do some act of his own not connected with or contemplated by the employment." *Krier*, 78 S.D. at 120–121, 98 N.W.2d at 488.

[¶ 16.] We believe a similar conclusion is obvious in this case. Abraham and Neeman were returning from a business trip which naturally started on the business premises in Sioux Falls and concluded when they returned to the premises; Abraham was being paid for his labor on the trip and his meals were provided; ev-

erything he did on the trip was business related and his actions on the trip were controlled by his employment; it was reasonably expected for him to be a passenger in the truck returning to the business premises and he did not "step aside" from his employment by riding back. The trial court did not err in finding that Abraham was injured in the scope of his employment.

[¶ 17.] In addition, the trial court did not err in finding that Neeman and Abraham were fellow employees on the trip and not employer and employee. Neeman worked for Country Side Tires and was paid wages, even though he and his wife were the only shareholders of the business and Neeman was president. Neeman is not the employer under these facts. He and Abraham are fellow employees of a common employer, Country Side Tires, Inc.

[¶ 18.] Once it is determined that Abraham's injury occurred in the scope of his employment, we must next look at the worker's compensation statutes to decide the level of coverage applicable and the remedies available to Abraham. "Worker's compensation was designed by the legislature to be the exclusive method for compensating workers injured on the job in all but extraordinary circumstances.... Consequently, this court construes worker's compensation statutes liberally to provide coverage even when the worker would prefer to avoid it." *Jensen v. Sport Bowl, Inc.*, 469 N.W.2d 370, 371 (S.D.1991) (citations omitted); *see also Great West Cas. Co. v. Bergeson*, 1996 SD 73, 550 N.W.2d 418.

[¶ 19.] SDCL 62–3–2 states:

The rights and remedies herein granted to an employee subject to this title, on account of personal injury or death arising out of and in the course of employment, shall exclude all other rights and remedies of such employee, his personal representatives, dependents, or next of kin, on account of such injury or death against his employer or any employee, partner, officer or director of such employer, except rights and remedies arising from intentional tort.

[¶ 20.] This Court has repeatedly stated that worker's compensation is the exclusive remedy for employees injured on the job, except for intentional torts. *Schipke v. Grad*, 1997 SD 38, 562 N.W.2d 109; *Harn v. Continental Lumber Co.*, 506 N.W.2d 91 (S.D.1993); *Jensen v. Sport Bowl, Inc.*, 469 N.W.2d at 371; *Goodman v. Sioux Steel Co.*, 475 N.W.2d 563 (S.D. 1991); *Southard v. Hansen*, 376 N.W.2d 56 (S.D.1985); *VerBouwens v. Hamm Wood Products*, 334 N.W.2d 874 (S.D.1983). Since Abraham was accidentally injured on the job, he is subject to the worker's compensation law and must look to those statutes for his remedy options. Abraham is subject to the restrictions on actions against fellow employee found in SDCL 62–3–2.

[¶ 21.] Abraham would like us to view SDCL 62–3–2 as only applicable when the employer has elected to participate in worker's compensation.[5] Such an interpretation of the law does not correspond with our previous holdings nor with a harmonious reading of the worker's compensation statutes as a whole. *National Farmers Union Prop. & Cas. Co. v. Bang*, 516 N.W.2d 313 (S.D.1994)(statutes should be read in harmony and construed so as to

---

**5.** In his brief, Abraham argues that employees are not immune from suit from fellow employees under this Court's decisions in *Blumhardt v. Hartung*, 283 N.W.2d 229 (1979) and *Wilson v. Hasvold*, 86 S.D. 286, 194 N.W.2d 251 (1972). In those cases we held that employees could maintain a separate action against fellow employees for on-the-job injuries despite worker's compensation coverage.

However, in the more recent of these cases, we noted that SDCL 62–3–2 had been amended to exclude "all other rights and remedies of the employee against co-employees except those arising from intentional tort." *Blumhardt*, 283 N.W.2d at 232. Thus, our holdings in those cases no longer have any effect due to statutory amendment and are not applicable here.

give effect to each statute); *In re Silver King Mines*, 323 N.W.2d 858, 860 (S.D. 1982); *Kinzler v. Nacey*, 296 N.W.2d 725, 728 (S.D.1980). If statutes conflict, "the more recent enactment is controlling." *In re Estate of Smith*, 401 N.W.2d 736, 740 (S.D.1987). Specific terms in one statute prevail over the general terms of another statute. *Meyerink v. Northwestern Public Service Co.*, 391 N.W.2d 180, 183–84 (S.D. 1986).

[¶ 22.] Our interpretation of this statute, in accordance with previous decisions and read together with other statutes, is that SDCL 62–3–2 does operate as an exclusionary provision which prevents claims against fellow employees for injuries obtained in the scope of employment even when the employer does not operate under South Dakota worker's compensation law. Accordingly, since Abraham's suit against fellow-employee Neeman is statutorily barred, Neeman is not and nor will he become "legally obligated to pay ... damages because of bodily injury" as is required under Canal's policy. Together with the "fellow employee not insured" exclusionary language found in Section A, Part III,[6] of the policy, this accident is not covered under Canal's liability policy and Canal owes no duty to either Neeman or Abraham in relation to the accident.

[¶ 23.] We realize that our holding may seem harsh, but Abraham did have other recourses for seeking damages. Abraham had remedy choices under worker's compensation. SDCL 62–3–11 states:

> Any employee, who is employed by an employer who is deemed not to operate under this title in accordance with § 62–5–7, or the dependents of such deceased employee, may elect to proceed against the employer in any action at law to recover damages for personal injury or death; or may elect to proceed against the employer in circuit court under the provisions of this title, as if the employer had elected to operate thereunder by complying with §§ 62–5–1 to 62–5–5, inclusive, and the measure of benefits shall be that provided by 62–4–1 plus twice the amount of other compensation allowable under this title; provided that such employee or his dependents shall not recover from both actions.

[¶ 24.] In *Keil v. Nelson*, 355 N.W.2d 525, 530 (S.D.1984), we addressed the options presented in SDCL 62–3–11:

> Today, an employee is provided the same option of either bringing a suit at common law or proceeding under the provisions of worker's compensation laws. If the employee chooses the former, then the worker's compensation laws should have no effect and both parties should be availed of the rules at common law, i.e., employee must prove fault and employer may raise affirmative defenses. However, if election is made to proceed under the provisions of the Act, the employer is treated as if operating under the Act and recovery is limited by that provided within the Act....
>
> Double damages are part and parcel of the recovery....
>
> This comports with the general purpose of the worker's compensation laws as outlined in our cases. *See Donovan v. Powers*, 86 S.D. 245, 193 N.W.2d 796 (1972).[7]

---

**6.** "None of the following is an insured: ... any person while engaged in the business of his employer with respect to bodily injury to any fellow employee of such person injured in the course of his employment."

**7.** In *Scissons v. City of Rapid City*, 251 N.W.2d 681, 686 (S.D.1977), we expressed:
> Workmen's compensation legislation is based upon the idea that the common law rule of liability for personal injuries incident to the operation of industrial enterprises, based as it is upon the negligence of the employer, with its defenses of contributory negligence, fellow servants' negligence, and assumption of risk, is inapplicable to modern conditions of employment. Under the compensation acts the theory of negligence as the basis of liability is discarded.
> The general purposes of workmen's compensation legislation, therefore, is the substitution in place of the doubtful contest for a recovery based on proof of the employer's

According to SDCL 62–3–11, Abraham was free to bring suit against his employer, Country Side Tires, either directly in an action at law or under the provisions of the worker's compensation statutes. However, Abraham cannot seek relief from Canal because this accident does not fall under Canal's policy coverage.

[¶ 25.] **Abraham is not entitled to the benefit of underinsured motorist coverage under Canal's policy.**

[¶ 26.] Abraham argues that if coverage is not found to exist under the bodily injury provisions of the policy, then the policy's underinsured motorist section should provide coverage for the injuries. This argument is without merit.

[¶ 27.] SDCL 58–11–9.4 requires policies of insurance to include underinsured motorist coverage.[8] Canal's policy did contain the requisite amount of underinsured motorist coverage of $100,000.

[¶ 28.] Neeman's vehicle was not uninsured or underinsured. The vehicle and Neeman were covered by insurance; it is the suit on the accident in question which was exempted from the policy's liability coverage. The underinsured motorist coverage mandated by law was not meant to "kick in" to cover single-vehicle accident suits which are excluded by the policy language; they are meant to protect the insured from uninsured third parties: "Essentially ... uninsured motorist coverage compensates the insured party for the difference between the required amount of liability insurance and the amount, if any, that can be recovered from the underinsured tort-feasor." *Rogers v. Allied Mut.*

*Ins. Co.*, 520 N.W.2d 614 (S.D.1994)(Sabers, J., concurring).

[¶ 29.] We have previously outlined the policy behind South Dakota's uninsured motorist statutes:

> The purpose of the uninsured motorist statutes is to provide the same insurance protection to the insured party who is injured by an *uninsured or unknown* motorist that would have been available to him had he been injured as a result of the negligence of a motorist covered by the minimum amount of liability insurance. (footnotes omitted).

*American Family Ins. v. Merrill*, 454 N.W.2d 555, 559 (S.D.1990)(quoting *Clark v. Regent Ins. Co.*, 270 N.W.2d 26, 29 (S.D.1978)).

[¶ 30.] Similarly, SDCL 58–11–9.5 requires:

> Subject to the terms and conditions of such underinsured motorist coverage, the insurance company agrees to pay its own insured for uncompensated damages as its insured may recover on account of bodily injury or death arising out of an automobile accident because the judgment recovered against the owner of the other vehicle exceeds the policy limits thereon. Coverage shall be limited to the underinsured motorist coverage limits on the vehicle of the party recovering less the amount paid by the liability insurer of the party recovered against.

[¶ 31.] The trial court did not err in ruling that Abraham cannot recover under the policy's underinsured motorist coverage.

[¶ 32.] **SDCL 58–20–12 does not apply to this claim.**

---

negligence and the absence of the common law defenses of a right for the employees to relief based on the fact of employment, practically automatic and certain, expeditious and independent of proof of fault and for the employers a liability which is limited and determinate. Workmen's Compensation Law, as contrasted with the common law system, are generally considered and recognized as embodying more advanced ideas with respect to economics and sociology.

8. SDCL 58–11–9.4:

No motor vehicle liability policy of insurance may be issued or delivered in this state with respect to any motor vehicle registered or principally garaged in this state unless underinsured motorist coverage is provided therein.

[¶ 33.] The trial court did not consider if SDCL 58–20–12 applies and Abraham submitted the argument only on motion for reconsideration and here on appeal. SDCL 58–20–12 provides, in part:

Every policy written insuring against the liability of employers for personal injuries, other than payment of compensation under the provisions of the title, "Worker's Compensation," shall contain provisions to the effect that the insurer shall be directly liable to the injured party, and, in the event of his death, to the party entitled to sue therefor, to pay him the amount of damages for which such insured is liable.

[¶ 34.] Abraham's assertion that the above section should operate in this case to require liability coverage under the Canal policy fails because the policy involved was an automobile insurance policy, not an employer's liability policy. The policy's stated insured is Neeman, not Country Side Tires, the employer. Thus, SDCL 58–20–12 does not apply in this case.

[¶ 35.] **Possible invalidity of the policy coverage exclusions.**

[¶ 36.] Because of our decision on issue one, which removed this accident from coverage under Canal's policy because Neeman is immune from suit, there is no need for us to discuss issue four regarding the viability of the exclusions contained in the policy.

[¶ 37.] The trial court is affirmed in all respects.

[¶ 38.] MILLER, Chief Justice, and AMUNDSON, KONENKAMP and GILBERTSON, Justices, concur.

[¶ 39.] VON WALD, Circuit Judge, for SABERS, Justice, disqualified.