#26331-a-SLZ

**2013 S.D. 50**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA
* * * *

RONALD VOELLER, COURT-APPOINTED
PERSONAL REPRESENTATIVE OF THE
ESTATE OF JULIE DIANE TASSLER
and COURT-APPOINTED GUARDIAN OF
MITCHEL KANE TASSLER
and KRISTAL MACIE TASSLER, MINORS
AND DEPENDANTS OF DECEASED
EMPLOYEE, JULIE DIANE TASSLER,                    Claimants and Appellants,


    v.

HSBC CARD SERVICES, INC. and
CHARTIS INSURANCE,                               Employer, Insurer and
                                                 Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE MARK BARNETT
Judge
* * * *

N. DEAN NASSER, JR.
JIMMY NASSER of
Nasser Law Offices, PC
Sioux Falls, South Dakota                        Attorneys for claimants
                                                 and appellants.


RICHARD L. TRAVIS
ERIC D. DENURE of
May & Johnson, PC
Sioux Falls, South Dakota                        Attorneys for employer, insurer
                                                 and appellees.

* * * *

ARGUED MARCH 20, 2013
OPINION FILED **07/10/13**

ZINTER, Justice

[¶1.]     Julie Tassler was shot and killed by her estranged husband in the parking lot of her employer.  The personal representative of Julie's estate sought worker's compensation benefits for her death.  Julie's employer and the South Dakota Department of Labor and Regulation denied benefits.  They ruled that Julie's death did not "arise out of" her employment.  The circuit court affirmed.  We affirm.

*Facts and Procedural History*

[¶2.]     On December 23, 2008, Julie served her husband Steven with a summons and complaint for divorce.  The next morning, Julie reported to work at HSBC Card Services (Employer), where she had been employed since 2002.  Around 9:30 a.m., Julie logged out of her work duties and left Employer's building to take her morning break in her car, which was in Employer's parking lot.  Steven, who had been waiting in the parking lot in his vehicle, shot and killed Julie near her parked car.  Steven then took his own life.  There were no witnesses to the incident.

[¶3.]     Ronald Voeller, Julie's father, was appointed the personal representative of Julie's estate.  After Employer denied worker's compensation benefits for Julie's death, Voeller filed a petition for benefits with the Department.

[¶4.]     To recover worker's compensation benefits, Voeller was required to prove, among other things, that Julie's death arose out of her employment.  Voeller argued that Julie's death arose out of her employment because "but for" her being at work that day, she would not have been killed.  Voeller also argued that Julie's employment facilitated her death because Steven would have only killed Julie on

Employer's premises. Voeller claimed that Julie was only away from their children while at work, and Steven would not have killed her when their children were present. Voeller also claimed that Steven knew the layout of the parking lot, Julie's vehicle model, Julie's habit of parking in a certain area of the lot, and Julie's routine of taking morning breaks in her car. On the other hand, Employer argued that Julie's death arose out of a domestic assault that was purely personal, and consequently, there was no causal connection between the assault and Julie's employment.

[¶5.]     On cross-motions for summary judgment, an administrative law judge granted summary judgment in favor of Employer. The ALJ noted that the "origin of the assault was a marital conflict[.]" The ALJ also noted that Steven and Julie were not coworkers, and there was "no evidence that [Julie's] employment or [any] relationship with a co-worker was a source of irritation in their marriage." The ALJ concluded that Julie's employment "did not exacerbate or contribute to the assault[,]" and Julie's death "did not 'arise out of' her employment and [was] not compensable[.]" The Department's Secretary affirmed the ALJ's decision. Voeller appealed to the circuit court, which affirmed.

*Decision*

[¶6.]     "When reviewing a grant of summary judgment, we decide only whether genuine issues of material fact exist and whether the law was correctly applied." *Fedderson v. Columbia Ins. Grp.*, 2012 S.D. 90, ¶ 5, 824 N.W.2d 793, 795 (internal quotation marks omitted). We conduct that review de novo. *Jorgensen Farms, Inc. v. Country Pride Coop., Inc.*, 2012 S.D. 78, ¶ 7, 824 N.W.2d 410, 414.

"All reasonable inferences drawn from the facts [are] viewed in favor of the nonmoving party and reasonable doubts [are] resolved against the moving party." *Gul v. Ctr. for Fam. Med.*, 2009 S.D. 12, ¶ 8, 762 N.W.2d 629, 632. However, "[e]ntry of summary judgment is mandated against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Zephier v. Catholic Diocese of Sioux Falls,* 2008 S.D. 56, ¶ 6, 752 N.W.2d 658, 662.

[¶7.]        To recover worker's compensation benefits, the employee has the burden of proving that he or she sustained an injury "arising out of" and "in the course of" employment. SDCL 62-1-1(7). We construe these requirements liberally so benefits are "not limited solely to the times when the employee is engaged in the work that he [or she] was hired to perform." *Fair v. Nash Finch Co.*, 2007 S.D. 16, ¶ 9, 728 N.W.2d 623, 628-29. Even though we analyze each requirement independently, "they are part of the general inquiry of whether the injury or condition complained of is connected to the employment." *Id.* ¶ 9, 728 N.W.2d at 629.

[¶8.]        In this case, the parties agree that Julie's death occurred in the course of her employment. The question is whether Julie's death arose out of her employment. To prove that an injury arose out of employment, "the employee must show that there [was] a 'causal connection between the injury and the employment.'" *Id.* ¶ 10, 728 N.W.2d at 629 (quoting *Bender v. Dakota Resorts Mgmt. Grp., Inc.*, 2005 S.D. 81, ¶ 10, 700 N.W.2d 739, 742). "Although the employment need not be the direct or proximate cause of the injury, the accident

must have its 'origin in the hazard to which the employment exposed the employee while doing [his or her] work.'" *Id.* (quoting *Bender*, 2005 S.D. 81, ¶ 10, 700 N.W.2d at 742).

[¶9.]    In determining whether the requisite causal connection exists, it is often useful to examine three categories of risk of injury to which an employee may be exposed: "risks distinctly associated with the employment, risks personal to the [employee], and neutral risks[.]" *Bentt v. D.C. Dep't of Emp't Servs.*, 979 A.2d 1226, 1232 (D.C. 2009) (internal quotation marks omitted). *See also Logsdon v. ISCO Co.*, 618 N.W.2d 667, 672 (Neb. 2000); *Fetzer v. N.D. Workforce Safety & Ins.*, 815 N.W.2d 539, 546 (N.D. 2012) (Maring, J., dissenting); 1 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law §§ 4.01-4.03 (2012). Injuries arising from risks distinctly associated with employment are universally compensable, while injuries from personal risks are generally noncompensable. *Bentt*, 979 A.2d at 1232; *Logsdon*, 618 N.W.2d at 672; *Fetzer*, 815 N.W.2d at 546; *see also* Larson, *supra*, § 7.02[4]. Risks personal to the employee are those risks "so clearly personal that, even if they take effect while the employee is on the job, they could not possibly be attributed to the employment." Larson, *supra*, § 4.02.

[¶10.]    Injuries occurring as a result of neutral risks may be compensable under the positional risk doctrine. *See, e.g.*, *Milledge v. Oaks*, 784 N.E.2d 926, 931-34 (Ind. 2003); *Logsdon*, 618 N.W.2d at 672-74; Larson, *supra* ¶ 9, § 3.05. The positional risk doctrine involves:

> situations in which the only connection of the employment with the injury is that its obligations placed the employee in the particular place at the particular time when he or she was injured by some neutral force, meaning by "neutral" neither

personal to the claimant nor distinctly associated with the employment.

Larson, *supra* ¶ 9, § 3.05. The positional risk doctrine utilizes the "but for" test:[1] "An injury arises out of the employment if it would not have occurred *but for* the fact that the conditions and obligations of the employment placed claimant in the position where he or she was injured." *Id.* Voeller argues that Julie's death is compensable under the "but for" test.

[¶11.] This Court—without stating it—has applied the positional risk doctrine. In *Steinberg v. South Dakota Department of Military & Veteran Affairs*, 2000 S.D. 36, ¶¶ 22, 30, 607 N.W.2d 596, 603, 606, a slip and fall on ice on employer's premises was compensable because the employee was "in an area where she might reasonably be and at the time when her presence there would normally

---

1. Many authorities, in applying the positional risk doctrine, utilize the "but for" test. *See Bentt v. D.C. Dep't of Emp't Servs.*, 979 A.2d 1226, 1232 (D.C. 2009); *Milledge v. Oaks*, 784 N.E.2d 926, 931 (Ind. 2003) (stating that the "but for reasoning is the foundation of the positional risk doctrine"); *Montgomery Cnty. v. Smith*, 799 A.2d 406, 412 (Md. Ct. Spec. App. 2002) (quoting John D. Ingram, *The Meaning of "Arising Out of" Employment in Illinois Workers' Compensation Law*, 29 J. Marshall L. Rev. 153, 158 (1995)) ("The positional risk test is essentially a 'but for' approach; thus, 'an injury is compensable if it would not have happened "but for" the fact that the conditions or obligations of the employment put the claimant in the position where he was injured.'"); *United Fire & Cas. Co. v. Maw*, 510 N.W.2d 241, 245 (Minn. Ct. App. 1994) ("[U]nder the positional-risk test, [the claimant's] employment put him in the position where he was injured. But for the obligations of his employment, [the claimant] would not have been on the street corner where his injuries occurred."); *Logsdon v. ISCO Co.*, 618 N.W.2d 667, 673 (Neb. 2000) (stating that the "but-for reasoning is the foundation of the positional risk doctrine"); *Rio All Suite Hotel & Casino v. Phillips*, 240 P.3d 2, 6 (Nev. 2010) (internal quotation marks omitted) (stating that "the positional-risk test is a but for approach that evaluates whether the claimant would have been injured *but for* the fact that the conditions and obligations of the employment placed the claimant in the position where he was injured.").

be expected." In *Walz v. Fireman's Fund Insurance Co.*, 1996 S.D. 135, ¶¶ 2, 5, 15, 556 N.W.2d 68, 69, 72, an employee's injury, which was sustained by slipping on ice in her employer's parking lot, was compensable because the employee "would not have been in [her] [e]mployer's parking lot if she had not been working that day." In *Fair v. Nash Finch Co.*, 2007 S.D. 16, ¶¶ 13-18, 728 N.W.2d 623, 629-32, an employee's fall while leaving the employer's store was compensable. We noted, "[A]ccidental injuries suffered by an employee while leaving the building wherein his actual work is being done are generally deemed to have arisen out of and in the course of the employment[.]" *Id.* ¶ 13, 728 N.W.2d at 629.

[¶12.]     In this case, however, compensation is not awardable under positional risk cases like *Steinberg*, *Walz*, and *Fair*. Unlike those cases, this case did not involve a neutral risk. Julie's death arose out of the personal risk that developed from accumulating domestic pressures and her divorce. By definition, the positional risk doctrine requires that the risk must be one in which "any other person then and there present would have met with irrespective of his employment[.]" *Steinberg*, 2000 S.D. 36, ¶ 25, 607 N.W.2d at 605. But here, no other employee present in Employer's parking lot that day would have been assaulted by Steven.

[¶13.]     Voeller, however, points out that this Court has allowed compensation under the "but for" test in two assault cases. In *Anderson v. Hotel Cataract*, 70 S.D. 376, 17 N.W.2d 913 (1945), this Court concluded that an assault by one coworker upon another coworker was compensable because "[b]ut for [the] employment and the presence of [the coworker] at his post of duty in the engine room, the assault would not have been made." *Id.* at 384, 17 N.W.2d at 917. In *Phillips v. John*

*Morrell & Co.*, 484 N.W.2d 527 (S.D. 1992), we stated that an "injury need not be proximately caused by the employment, but simply that it would not have occurred *but for* the employment." *Id.* at 530 (emphasis added). We concluded "that the injury [caused by one coworker's assault of another coworker] arose 'out of' [the] employment. [The injured coworker] would not have become injured but for the fact he was at work." *Id.* Relying on these cases, Voeller argues that "the necessary quantum of 'work-relatedness'" is present in this case because "but for" Julie's presence at work, she would not have been killed.

[¶14.] Voeller's reliance on *Phillips* and *Anderson* is misplaced. Compensation was awarded in *Phillips* and *Anderson* because the assaults involved coworkers and because employment played a role in the assaults. *Phillips* involved two coworkers' horseplay while performing their job duties. *Id.* at 529. *Anderson* involved two coworkers' argument that "was generated by [the coworkers'] association in the employment," a point that was central to that holding. *See* 70 S.D. at 384, 17 N.W.2d at 917.[2] Indeed, *Anderson* relied on *Hartford Accident &*

---

2.    The parties disagree whether the argument between the coworkers in *Anderson v. Hotel Cataract*, 70 S.D. 376, 17 N.W.2d 913 (1945), was personal or related to employment. Therefore, the parties disagree how and whether *Anderson* should be applied. In *Anderson*, the Industrial Commissioner's findings of fact conflicted. The findings indicated "that the . . . assault on the part of [assailant] was motivated by the [decedent's] announced intention of quitting his work[.]" *Id.* at 379, 17 N.W.2d at 915. But the findings also indicated "that [the] assault . . . was not caused by [the] discussion with reference to [the] work[.]" *Id.* Nevertheless, there is no dispute that the assault in *Anderson* did involve coworkers. Further, our analysis reflects that compensation was premised on the understanding that "accumulat[ing] pressures [leading to the assault] must be attributable in substantial part to the working environment." *See id.* at 383, 17 N.W.2d at 917. In this case, Julie and Steven were not coworkers and the accumulated pressures leading
(continued . . .)

*Indemnity Co. v. Cardillo*, 112 F.2d 11, 16-17 (D.C. Cir. 1940), which pointed out that compensation is awardable where personal animosities develop during employment, and the accumulated pressures of employment cause assaults between coworkers. *See Anderson*, 70 S.D. at 382-83, 17 N.W.2d at 916-17.

> [W]ork places men under strains and fatigue from human and mechanical impacts, creating frictions which explode in myriads of ways, only some of which are immediately relevant to their tasks. Personal animosities are created by working together on the assembly line . . . . [And accumulated pressures] explode over incidents trivial and important, personal and official.

*Id.* at 382, 17 N.W.2d at 916 (quoting *Cardillo*, 112 F.2d at 17).

[¶15.] But today's case does not involve coworkers. Further, "the accumulated pressures [leading to the assault were not] attributable in substantial part to the working environment." *See id.* at 383, 17 N.W.2d at 917. There is no dispute that the assault occurred because of the accumulated pressures of Julie and Steven's marital difficulties. Voeller acknowledged in his summary judgment affidavit that "the murder itself was motivated primarily by anger and rage from divorce conflicts. It was a product of passion and heat of the moment." Therefore, *Phillips* and *Anderson* do not support an award of compensation in this case.[3]

---

(. . . continued)
to the assault did not develop from employment. They developed from a domestic dispute. Therefore, *Anderson* is no authority for compensation in this case.

3.  Voeller points out that Louisiana and Kentucky have extended the "but for" positional risk doctrine to personal assault cases. Therefore, Voeller contends that "there is ample authority for applying 'positional risk' analysis (in a privately motivated assault case) despite the non-neutral nature of the risk." It appears, however, that those states overextended the positional risk doctrine, and therefore, we decline to adopt that view. *See, e.g.*, 1 Arthur
(continued . . .)

[¶16.]     Although a causal connection between employment and Steven's assault was not established under the "but for" test, an assault resulting from a private quarrel may be compensable if the employment contributed to the assault. Employment may contribute to an assault if the employment engendered, exacerbated, or facilitated the assault.[4]  *See Morris v. Soloway*, 428 N.W.2d 43, 45-46 (Mich. Ct. App. 1988).  But:

> When it is clear that the origin of the assault was purely private and personal, and that the employment contributed nothing to the episode, whether by engendering or exacerbating the quarrel

_____

(. . . continued)

Larson & Lex K. Larson, Larson's Workers' Compensation Law § 3.05 (2012) ("Difficulty may soon appear . . . where a court, having seized upon the positional risk test in a case involving a neutral risk, then has to apply its adopted test more broadly.").  *See also* Larson, *supra*, § 8.04 (stating that "Louisiana has carried the [positional risk doctrine] the furthest of all, and indeed, . . . has even overshot the mark somewhat by disregarding the 'neutral-risk' limitation of the rule in personal-assault cases.").

Additionally, even though Louisiana courts extended the "but for" positional risk doctrine to privately motivated assaults not involving coworkers, s*ee, e.g., Duncan ex rel. Hahn v. S. Cent. Bell Tel. Co.*, 554 So. 2d 214 (La. Ct. App. 1989); *Gorings v. Edwards*, 222 So. 2d 530 (La. Ct. App. 1969); *Rogers v. Aetna Cas. & Sur. Co.*, 173 So. 2d 231 (La. Ct. App. 1965), "the Louisiana legislature reacted to [those] decisions by enacting legislation specifically excluding workers' compensation recovery if the employee is injured by another person over matters not related to the employment." Larson, *supra*, § 8.02[1][c].

4.     Those compensable situations typically arise when there is a specialized nature of employment, employment is the subject matter of the assault, an employer has knowledge of the risk, employment has a role of bringing the assailant and the victim together, or employment plays a role in supplying the weapon used in an assault.  *See* Larson, *supra* note 3, §§ 8.01[1]-[2], 8.02[3][a]-[e]; *see also Carnegie v. Pan Am. Linen*, 476 So. 2d 311 (Fla. Dist. Ct. App. 1985); *Tampa Maid Seafood Prods. v. Porter*, 415 So. 2d 883 (Fla. Dist. Ct. App. 1982); *Carter v. Penney Tire & Recapping Co.*, 200 S.E.2d 64 (S.C. 1973); *Bell v. Kelso Oil Co.*, 597 S.W.2d 731 (Tenn. 1980).  None of those situations are present in this case.

> or facilitating the assault, the assault should be held noncompensable[.]

*Id.* (quoting the materially identical predecessor to Larson, *supra* ¶ 9, § 8.02[1][c]).

Thus, "when the animosity or dispute that culminates in an assault is imported into the employment from claimant's domestic or private life, and is not exacerbated by the employment, the assault does not arise out of the employment[.]" *Monahan v. U.S. Check Book Co.*, 540 N.W.2d 380, 384 (Neb. Ct. App. 1995) (quoting the materially identical predecessor to Larson, *supra* ¶ 9, § 8.02[1][a]).

[¶17.]     Voeller acknowledges the foregoing rules but contends that this assault is compensable because Julie's employment "contributed" to the episode by "facilitating" the assault. *See Morris*, 428 N.W.2d at 45. Voeller points out that personal assaults are compensable if the nature of the employment facilitated the assault by increasing the risk of harm.

> [E]very jurisdiction . . . accepts, at the minimum, the principle that a harm is compensable if its risk is increased by the employment, [and] the clearest ground of compensability in the assault category is a showing that the probability of assault was augmented either because of the particular character of claimant's job or because of the . . . environment in which he or she must work.

Larson, *supra* ¶ 9, § 8.01[1][a]. *See also Fisher v. Halliburton*, 667 F.3d 602, 615 (5th Cir. 2012); *Cal. Comp. & Fire Co. v. Workmen's Comp. App. Bd.*, 436 P.2d 67, 69 (Cal. 1968) ("There can be no doubt that [employee's] duties placed her in an isolated location, that the nature of her work was a factor in [her] husband's elaborate scheme and at the very least facilitated the assault, and that this was a contributory cause of her death.").

[¶18.]     Voeller does not contend that the particular character of Julie's job increased the risk of assault.[5] He contends that Julie's employment environment facilitated and contributed to the assault because Julie's employment provided the only time and place that she would be away from her and Steven's children. Voeller contends that Steven would not have killed Julie in front of their children. Voeller relies on assertions in his own affidavit, as well as assertions in affidavits of his wife and Andy Minihan, an investigator and law enforcement officer. Voeller points out that these affiants all claimed that Julie's place of employment provided the only opportunity for Steven to kill Julie. Voeller argues that the ALJ and circuit

---

5.     Larson has identified a number of jobs that have been held to involve an increased risk of assault:

> Among the particular jobs that have, for self-evident reasons, been held to subject an employee to a special risk of assault are those jobs that have to do with keeping the peace or guarding property, such as those of police officers, deputy sheriffs, marshals, and prison guards, and, to the extent that they have as one of their duties the protection of the premises and the settling of disputes, also superintendents, foremen, private security guards, and janitors; those jobs that involve carrying money, with the increased temptation to robbery, or even those that require the employee to be near the employee actually handling the money, such as collector, cashier or teller, assistant manager of a restaurant, and any other job that either actually entails handling of money or gives potential robbers that impression; those jobs that specially expose the employee to lawless or irresponsible members of the public, such as the job of bartender, or night club employee, or that merely subject the employee to increased and indiscriminate contact with the public, such as the jobs of streetcar conductor, bus driver, taxi driver, hotel domestic worker, or hotel manager.

Larson, *supra* note 3, § 8.01[1][a] (footnotes omitted).

court erred in not accepting these assertions as true for purposes of summary judgment.

[¶19.]     However, these assertions are conclusory and speculative, and none of the affiants offered specific facts supporting the claim that Steven did not have access to Julie at any other time. For example, Minihan asserted that Steven "apparently had an aversion to demonstrating acts of violence with Julie in front of their children [and] the only place he could be assured of having her be apart from the children where she would be accessible to him was at work while on break." Minihan acknowledged in his affidavit that his opinions were "based on that assumption." The assumption that Employer's premises was the "only" place where Steven could have assaulted Julie is an unsupported conclusion that is speculative, and therefore, is not sufficient to raise a genuine issue of disputed fact. *See Paradigm Hotel Mortg. Fund v. Sioux Falls Hotel Co.*, 511 N.W.2d 567, 569 (S.D. 1994).

[¶20.]     Moreover, even if Voeller's assertions were not conclusory and speculative, they were not material. *See generally Hall v. State ex rel. S.D. Dep't of Transp.*, 2011 S.D. 70, ¶ 9 n.3, 806 N.W.2d 217, 221 n.3 ("Disputes of fact are not material unless they change the outcome of a case under the law."). As previously noted, to be compensable under this rule, the risk of assault must be increased by the employment.[6] In this case, the risk must have been "augmented . . . because of the . . . environment in which [Julie] work[ed]." *See* Larson, *supra* ¶ 9, § 8.01[1][a].

---

6.     We have rejected an "increased risk rule" in some cases. But those cases involved neutral risks. *See Steinberg v. S.D. Dep't of Military & Veterans*

(continued . . .)

[¶21.]     Voeller is essentially arguing that mere presence at one's place of employment, which isolates the employee from some family members, increases the risk of assault by other family members.  However, temporary absence from family members while working is a part of most employment environments.  Were we to hold that absence from some of one's family alone increases the risk of a workplace injury, employers would be responsible for all injuries occurring on the employer's premises, even though the cause of the injury had no connection to the hazards of employment.

[¶22.]     Voeller also argues that Julie's employment contributed to and facilitated the assault because Steven had knowledge of the details of Julie's employment, including her use of the parking lot, her break routine, and her type of vehicle.  But that knowledge was not obtained through Julie's employment.  It is undisputed that Steven "learned of [Julie's] work schedule and break routine from [Julie] or his own past observations." ALJ Letter Decision and Order, Undisputed Fact #9.  Julie's employment did not contribute to Steven's acquisition of this knowledge.

---

(. . . continued)

> *Affairs*, 2000 S.D. 36, ¶¶ 25-27, 607 N.W.2d 596, 604-05; (reiterating the rule from *Nippert v. Shinn Farm Constr. Co.*, 388 N.W.2d 820, 822 (Neb. 1986) that "an employee's injuries are compensable as long as his employment duties put him in a position that he might not otherwise be in which exposes him to a risk, even though the risk is not greater than that of the general public.").  And in neutral risk cases, an employee may be compensated for an injury if the "source of [that injury] was a natural phenomenon *and a risk common to all*[.]" *See id.* ¶¶ 25, 27, 607 N.W.2d at 604-05 (emphasis added).  Voeller does not present such a case.  *See supra* ¶ 15.

[¶23.]  Voeller next argues that Julie's employment contributed to the assault because, even though no one "know[s] exactly what was said or what happened at the scene[,]" the assault "likely centered around" Julie's refusal to talk to Steven due to her work.  Voeller argues that "it was totally speculative for the ALJ to assume that [Steven's] personal motive was the sole active cause" of Julie's death.  However, Voeller carried the trial burden of proof on this issue and he did not identify specific facts suggesting that Steven's motive for the assault arose from Julie's work obligations.  The ALJ recognized this lack of evidence, noting that "[t]here is . . . no evidence that [Julie's] employment . . . was a source of irritation in their marriage."

[¶24.]  Voeller finally argues that the ALJ and the circuit court erred in "never consider[ing] the [unexplained death] presumption or whether it was rebutted."  Under the unexplained death presumption, "when an employee is found dead under circumstances indicating death took place within the time and space limits of the employment, in the absence of any evidence of what caused the death, there is a presumption or inference that death arose out of the employment." *King v. Johnson Bros. Constr. Co.*, 83 S.D. 69, 75, 155 N.W.2d 183, 186 (1967).

[¶25.]  Employer responds that it is known what caused Julie's death: a fatal gunshot wound inflicted by Steven.  Therefore, Employer contends that the unexplained death presumption is not applicable.  The presumption does not, however, apply only in situations where the immediate cause of death is unexplained. *See Zamora v. Coffee Gen. Hosp.*, 290 S.E.2d 192, 194 (Ga. Ct. App. 1982).  "If that were the rule, in view of modern forensic medical techniques, there

would be no viability whatsoever to the 'well established' presumption. This would be true because there are very few cases in which the immediate cause of death cannot be determined to at least some degree of medical and legal exactitude." *Id.* Thus, the presumption also applies "when the death itself has removed the only possible witness who could prove causal connection[.]" *Id. See also King*, 83 S.D. at 75, 155 N.W.2d at 186 ("In unwitnessed death cases . . . the claimant is placed in an extremely difficult position. . . . The death of the employee usually deprives the dependent of his best witness—the employee himself—and, especially where the accident is unwitnessed, some latitude should be given."). Because there were no witnesses to this assault, Julie's death is "unexplained" and we presume that her death arose out of her employment unless the presumption was rebutted.

[¶26.]       The unexplained death presumption is only "a procedural presumption [that] disappears when the employer produces rebutting evidence on the issue[.]" *King*, 83 S.D. at 75, 155 N.W.2d at 186. Rebutting evidence is "substantial, credible evidence[,]" SDCL 19-11-1 (Rule 301), which is "such evidence [that] a trier of fact would find sufficient to base a decision on the issue, if no contrary evidence was submitted." *Estate of Dimond*, 2008 S.D. 131, ¶ 9, 759 N.W.2d 534, 538. If an employer presents rebutting evidence, the "arising out of employment" issue "must be determined on the evidence as though no presumption had ever existed." *King*, 83 S.D. at 75, 155 N.W.2d at 186.

[¶27.]       In this case, Employer identified substantial, credible evidence from which a trier of fact could find that Julie's death arose out of a purely personal assault that was caused by Steven and Julie's marital problems. Employer's human

resources director, who Julie had confided in regarding her marital problems, indicated that Julie and Steven had "a lot of domestic problems." The day before the assault, Julie commenced an action for divorce. A coworker of Steven's indicated that Steven was also angry with Julie because she had apparently withdrawn a large sum of money from their joint bank account. Finally, the investigating police detective indicated that his and other officers' conclusion was that "this incident was obviously a domestic situation which had turned to the worse." Voeller even conceded in his affidavit that he "believe[d] the murder itself was motivated primarily by anger and rage from divorce conflicts." Because Employer identified substantial, credible evidence rebutting the unexplained death presumption, the presumption was eliminated from the case. And because no presumption existed in this case, the ALJ and circuit court did not err in failing to apply it.

[¶28.] In sum, Voeller failed to satisfy his summary judgment burden of identifying specific facts suggesting that Julie's death had its "origin in the hazard to which the employment exposed [Julie] while doing her work." *See Fair*, 2007 S.D. 16, ¶ 10, 728 N.W.2d at 629. Employer's only role in the assault was that it was the place where Steven found Julie, a connection that is not sufficient by itself to make the assault compensable. *See Temple v. Denali Princess Lodge*, 21 P.3d 813, 816 (Alaska 2001) (internal quotation marks omitted) ("Courts are especially likely to deny compensation when the sole role of employment in the assault is providing a place where the assailant can find the victim."). This "assault occurred on Employer's premises not because [Julie] was performing h[er] duties at the time of

the assault, but because [s]he merely was there." *See id.* at 817-18. The risk of this assault was so clearly personal to Julie, that even though it occurred while she was at her place of work, the assault cannot possibly be attributed to her employment. We hold that Julie's death did not "arise out of" her employment. Summary judgment was correctly granted.

[¶29.] GILBERTSON, Chief Justice, and KONENKAMP, SEVERSON and WILBUR, Justices, concur.