#29548, #29576-aff in pt & rev in pt-SPM
**2022 S.D. 34**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

MELISSA DITTMAN,                                  Claimant and Appellant,

    v.

RAPID CITY SCHOOL DISTRICT and
DAKOTA TRUCK UNDERWRITERS,            Employer, Insurer, and
                                                                          Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE CHRISTINA L. KLINGER
Judge

* * * *

JAMES D. LEACH
Rapid City, South Dakota                          Attorney for claimant
                                                                          and appellant.

MICHAEL SNYDER of
Davenport, Evans, Hurwitz,
   & Smith, LLP
Sioux Falls, South Dakota                          Attorneys for employer, insurer,
                                                                          and appellees.

* * * *

CONSIDERED ON BRIEFS
AUGUST 23, 2021
OPINION FILED **06/15/22**

MYREN, Justice

[¶1.]	Rapid City School District (Employer) and Dakota Truck Underwriters (Insurer) denied coverage for medical expenses Melissa Dittman incurred while being treated by Dr. Donald Corenman.  Dittman filed a petition for hearing with the Department of Labor and Regulation (Department).  The Department granted Employer/Insurer's motion for summary judgment regarding these medical expenses.  Dittman appealed to the circuit court, which affirmed the Department's decision.  Dittman appeals.  Employer/Insurer filed a notice of review regarding an earlier ruling by the Department.  We affirm in part and reverse in part.

## Facts and Procedural History

[¶2.]	On February 17, 2017, Dittman injured her back while working as a special education teacher for Employer.  Dittman provided Employer with timely notice of her injury.  At the time of the injury, Insurer insured the Employer.  Dittman initially sought treatment with Black Hills Orthopedic & Spine Center on April 27, 2017, from Dr. Robert Woodruff and his physician's assistant (P.A.), Mitch Grieve.  P.A. Grieve referred Dittman to Dr. Peter Vonderau at The Rehab Doctors for pain treatment.  Dittman attended appointments with Dr. Vonderau in 2017 and 2018.[1]

[¶3.]	At an August 2, 2017 appointment, Dr. Vonderau and Dittman discussed the possibility of surgery.  Dr. Vonderau referred Dittman back to Black Hills Orthopedic & Spine Center for a surgical evaluation.  On August 10, 2017,

---

1.	In their briefing before the Department, the circuit court, and this Court, both parties treat Dr. Vonderau as Dittman's initial treating physician under SDCL 62-4-43.

P.A. Grieve determined that Dittman was not a surgical candidate. Despite this assessment, Dittman continued discussing surgery with Dr. Vonderau and indicated that she would continue researching potential surgeons. Insurer paid Dittman's medical expenses related to Dr. Woodruff, Dr. Vonderau, and P.A. Grieve.

[¶4.]        Dittman identified a potential surgeon, Dr. Donald Corenman in Vail, Colorado. Dr. Vonderau had previously made successful referrals to Dr. Corenman. On November 3, 2017, Dr. Vonderau submitted a request for a surgical consultation with Dr. Corenman to Employer/Insurer's case management plan provider. The case manager handling Dittman's claims denied this request.

[¶5.]        Dittman filed a petition for hearing regarding this denial on November 28, 2017. Dittman asserted that she sustained an injury arising out of and in the course of her employment, that Employer received notice the same day, that Employer was insured by Insurer, that she was entitled to workers' compensation benefits, and that Insurer was refusing to pay expenses related to the referral from her treating physician to Dr. Corenman.

[¶6.]        On January 4, 2018, Employer/Insurer filed an answer in which they alleged the petition failed to state a claim upon which relief could be granted and denied "each and every allegation in the Petition unless specifically admitted or qualified." With respect to Dittman's claims of work-related injury and notice to Employer, Employer/Insurer limited its answer as follows: "[A]dmit only that on or about February 17, 2017, Claimant reported to Employer that she claimed to have suffered an injury to her low back arising out of and in the course of employment." Insurer admitted insuring Employer and asserted "that all workers' compensation

benefits to which Claimant has demonstrated entitlement and of which they are aware have been paid."

[¶7.]    The Department entered a scheduling order which required the parties to identify the issues to be decided by the Department. On January 16, 2018, Dittman specified: "I believe the only relevant issue is whether the treating physician Dr. Vonderau's referral of Ms. Dittman to Dr. Corenman in Colorado for a second opinion is a covered expense under worker's compensation. The employer's Answer denies that Ms. Dittman sustained an injury, but I do not believe this is a genuine issue." Employer/Insurer identified the issue as: "Whether the evaluation Claimant seeks with Dr. Corenman is a second opinion at her own expense pursuant to SDCL 62-4-43."

[¶8.]    On February 9, 2018, Dittman again talked to Dr. Vonderau about her ongoing pain and her desire for further assessment. Dr. Vonderau referred Dittman to Dr. Corenman because conservative treatment had not provided her relief from pain. This time, Dr. Vonderau did not seek prior approval from Insurer's case management plan provider. Dittman had a long-distance telephonic consultation with Dr. Corenman on July 17, 2018. On October 2, 2018, Dittman traveled to Colorado for an evaluation. On December 3, 2018, Dittman underwent a successful spinal fusion surgery with Dr. Corenman.

[¶9.]    On February 28, 2018, Dittman filed a motion to compel discovery related to a request for admission she had served upon Employer/Insurer. The request for admission asked Employer/Insurer to admit that: "On or about February 17, 2017, claimant sustained an injury arising out of and in the course of her

employment." Employer/Insurer objected to the request for admission "on the grounds that it is irrelevant to the sole issue . . . and not likely to lead to the discovery of admissible evidence" and because it sought a legal conclusion for which Dittman bears the burden of proof. Reserving these objections, Employer/Insurer then responded that Dittman "claimed she suffered an injury at work on or about February 17, 2017, for which she has received workers' compensation benefits, but the Employer and Insurer expressly reserves all rights under Title 62 to continue to investigate the claim, specifically including but not limited to whether her employment, including any February 17, 2017 injury, remains a major contributing cause of her condition, impairment disability, or need for treatment." The Department established a briefing schedule related to the motion to compel discovery.

[¶10.] In its briefing in opposition to the motion to compel, Employer/Insurer argued that it had not denied Dittman's claims for benefits, except for those related to Dr. Corenman. Employer/Insurer explained that this denial was based on an application of SDCL 62-4-43 and not a general denial of compensability. Secondly, Employer/Insurer argued the request for admission improperly called for an admission on a question of law. Lastly, after noting that a claimant has the burden to prove entitlement to compensation, Employer/Insurer argued that the request for admission was merely an attempt to shift that burden to the Employer/Insurer. Employer/Insurer argued that, under SDCL 62-7-33, once an insurer admits compensability, the insurer has the burden to prove a change in the claimant's condition before the insurer may deny additional benefits, citing *Hayes v.*

*Rosenbaum Signs & Outdoor Advertising, Inc.*, 2014 S.D. 64, ¶ 23, 853 N.W.2d 878, 884. Employer/Insurer argued that the workers' compensation system encourages employers to pay claims promptly, which would be adversely affected if prompt payment of claims precluded the employer from later denying liability based on later-acquired information. Dittman contended that "there is no reason why" Employer/Insurer should not be required to admit or deny that the injury arose out of and in the course of employment. The Department denied the motion to compel discovery because "the issue in this matter is limited and it seems the objection to admission is given in good faith."

[¶11.] Dittman filed a motion for partial summary judgment on the issue of whether she sustained an injury arising out of and in the course of employment. Employer/Insurer filed a motion for summary judgment asserting Dittman's petition for hearing was moot. The mootness argument was premised on Employer/Insurer's belief that Dr. Corenman would not treat Dittman because he would not handle workers' compensation cases. Employer/Insurer eventually withdrew its motion for summary judgment based on mootness when Dittman established that Dr. Corenman had already treated her. The Department denied Dittman's motion for partial summary judgment, concluding that it was unnecessary to address whether Dittman's injury arose out of and in the course of employment to address the issue in dispute—whether she was entitled to reimbursement for the expense of Dr. Corenman's examination.

[¶12.] The Department issued another letter decision determining that Dittman's consultation with Dr. Corenman was a "referral made by Dr. Vonderau

and not a request for a second opinion sought by Dittman under SDCL 62-4-43." Three days later, the Administrative Law Judge (ALJ) signed an order which specified that the letter decision constituted the Department's findings of fact and conclusions of law and ordered that the "visit with Dr. Corenman was a compensable referral under SDCL 62-4-43." Employer/Insurer then submitted a letter inquiring about the ALJ's intended process for entry of findings of fact and conclusions of law. The letter also noted that the decision did not address whether the referral to an out-of-plan provider was proper. After receiving that letter, the ALJ issued an order vacating the prior order and establishing a schedule for submitting proposed findings and conclusions. The parties submitted their proposed findings and conclusions. The ALJ then issued an amended letter decision expanding and revising the analysis of the referral issue. The ALJ determined that although Dr. Vonderau referred Dittman to Dr. Corenman, "Dittman is responsible for the evaluation and related expenses of treatment by Dr. Corenman" because he was an out-of-plan provider. The ALJ entered findings of fact, conclusions of law, and an order effectuating the amended letter decision. Dittman appealed that decision to the circuit court.

[¶13.] After considering the parties' briefs, the circuit court issued a memorandum decision in which it determined that the Department erred by not deciding compensability. The circuit court determined that Employer/Insurer had denied compensability, reversed the Department's contrary determination that Employer/Insurer had not entered a "true denial," and affirmed the Department's decision that Dr. Corenman's expenses were the result of a referral by Dr. Vonderau

rather than Dittman seeking a second opinion. Finally, the circuit court noted that, under the regulations, Employer/Insurer would be responsible for the expenses of a referral to an out-of-plan provider if the referral fell within one of the exceptions to ARSD 47:03:04:05—such as a denial of compensability.[2] The circuit court remanded to the Department for further proceedings.

[¶14.] Upon remand to the Department, Employer/Insurer filed a motion seeking leave to file an amended answer. They argued that "Employer and Insurer have not disputed Claimant sustained a workplace injury and have never denied the compensability of Claimant's claim." They claimed they should be allowed to amend their amended answer "to confirm and clarify their position on this issue." Dittman objected to this request. She also filed a renewed motion for partial summary judgment and a new motion for summary judgment regarding her average weekly wage determination. Despite the circuit court's decision, Employer/Insurer again argued that "[e]ven on remand, resolution of this issue is still unnecessary and is not a justiciable issue because it is moot."

---

2. ARSD 47:03:04:05 provides in pertinent part:

> A medical provider who is not a participating provider in the case management plan may provide medical services to an employee in any of the following circumstances . . .
>> (4) When compensability for an injury or disability is denied by the insurer. The employer is liable for reasonable and necessary medical services if the injury or disability is later determined compensable. At the point that the injury or disability is accepted as compensable by the insurer or is determined to be compensable, the medical provider must comply with the requirements of § 47:03:04:06.

[¶15.]     The ALJ granted Employer/Insurer's motion to file an amended answer. After filing the answer, Employer/Insurer also filed a motion for summary judgment asserting that because Dr. Corenman was an out-of-plan provider, his expenses did not constitute compensable care unless justified under one of the exceptions outlined in ARSD 47:03:04:05.

[¶16.]     On August 3, 2020, the ALJ issued a letter decision addressing several pending motions. The ALJ reasoned that the circuit court had relied on the language of Employer/Insurer's original answer when discussing whether there had been a denial of compensability. The ALJ explained that Employer/Insurer had "clarified their position and Amended the Answer to reflect that they do not deny compensability." The ALJ concluded that because of the filing of the amended answer, there was no remaining "controversy regarding benefits." As a result, the ALJ concluded there was "no controversy affecting Dittman's rights" for the Department to decide and denied Dittman's renewed motion for summary judgment.

[¶17.]     The ALJ then addressed Employer/Insurer's motion for summary judgment. After noting that Dr. Corenman is an out-of-plan provider under the managed care plan applicable to Dittman, the ALJ discussed the application of ARSD 47:03:04:05. The ALJ determined that the first three exceptions contained therein were not applicable. The ALJ determined that ARSD 47:03:04:05(4) "no longer applies as the Amended Answer has clarified that Employer and Insurer do not deny compensability . . . ." Based on that determination, the ALJ concluded "that the issue of the referral to Dr. Corenman has been resolved, and, with the

amendment to the Answer, the issue of compensability is not ripe for adjudication."

The ALJ granted Employer/Insurer's motion for summary judgment. The ALJ also

addressed Dittman's motion for partial summary judgment regarding her average

weekly wage determination and decided Dittman's bonuses were discretionary and

consequently should not be included in the calculation to determine her average

weekly wage.

[¶18.] Both parties submitted proposed findings of fact and conclusions of law

related to the ALJ's letter decision on August 3, 2020. The ALJ entered findings of

fact, conclusions of law, and an order on September 21, 2020. Dittman again

appealed to the circuit court, and after hearing oral arguments, the circuit court

issued a memorandum decision. First, the circuit court determined that the

Department did not abuse its discretion by granting the motion to file an amended

answer. Second, the circuit court affirmed the Department's decision to grant

Employer/Insurer's motion for summary judgment. It first noted that there was no

dispute that Dr. Corenman was an out-of-plan provider. The circuit court then

addressed ARSD 47:03:04:05(4), which would make Employer/Insurer liable for the

expense of an out-of-plan provider if they had denied compensability. The circuit

court decided this regulation was not applicable because Employer/Insurer did not

deny compensability in their amended answer. Third, the circuit court affirmed the

Department's determination that Dittman's bonuses were discretionary and thus

not usable to determine her average weekly wage. The circuit court entered an

order affirming the Department's decision. Dittman appeals. Employer/Insurer

filed a notice of review regarding the circuit court's determination that Dr.

Vonderau had made a referral to Dr. Corenman.

## Analysis and Decision

### 1. Whether the Department erred when it determined that Dr. Vonderau made a referral to Dr. Corenman.

[¶19.] On notice of review, Employer/Insurer argues that Dr. Vonderau's

"referral" to Dr. Corenman did not constitute a "referral" because it was for a second

opinion at Dittman's request.

[¶20.] SDCL 62-4-43 provides that an employee may initially select their

medical practitioner or surgeon. It further provides that the chosen practitioner

"may arrange for any consultation, referral, or extraordinary or other specialized

medical services as the nature of the injury shall require." *Id.* Moreover, "[t]he

employer is not responsible for medical services furnished or ordered by any medical

practitioner or surgeon or other person selected by the employee in disregard of this

section." *Id.* Lastly, "[a]n employee may seek a second opinion without the

employer's approval at the employee's expense." *Id.*

[¶21.] "Second opinion" is not defined in SDCL 62-4-43 but is defined in two

statutes within SDCL Title 58 (governing insurance generally) as:

> an opportunity or requirement to obtain a clinical evaluation by
> a provider other than the one originally making a
> recommendation for a proposed health care service to assess the
> medical necessity and appropriateness of the initial proposed
> health care service[.]

SDCL 58-17H-1(30); SDCL 58-17I-1(34). "Whenever the meaning of a word or

phrase is defined in any statute such definition is applicable to the same word or

phrase wherever it occurs except where a contrary intention plainly appears."
SDCL 2-14-4.

[¶22.]    It is undisputed that Dittman located Dr. Corenman and suggested to Dr. Vonderau that she would like a referral. Dr. Vonderau subsequently referred Dittman to Dr. Corenman because he determined it was reasonable and necessary because the conservative care Dittman had been receiving was not providing her with sufficient relief.

[¶23.]    The Department found that Dr. Vonderau referred Dittman to Dr. Corenman. His referral was based on his determination that it was "reasonable and necessary" based on his assessment that it was "very reasonable" for Dittman to talk to a surgeon because she was not receiving relief from conservative care and was experiencing adverse side effects from her prescribed pain medications. Employer/Insurer did not contend that Dr. Vonderau's referral was made for any other purpose. Because the Department determined that Dr. Vonderau made the referral, the question became whether the Employer/Insurer was responsible for expenses related to the referral because it had denied compensability. We conclude that the circuit court did not err in determining that the Department correctly applied the law when evaluating whether Dr. Vonderau made a referral.

### 2.    *Whether the Department erred in granting Employer/Insurer's motion for summary judgment.*

[¶24.]    Dittman argues that ARSD 47:03:04:05(4) entitled her to receive treatment from a provider outside her managed care plan because Employer/Insurer denied compensability at the time she received the referral to Dr. Corenman.

[¶25.]     The Department can properly award summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." ARSD 47:03:01:08.  In reviewing summary judgment, this Court:

> must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law.  The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party.  The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists.  Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied.  If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.

*Brandt v. Cnty. of Pennington*, 2013 S.D. 22, ¶ 7, 827 N.W.2d 871, 874 (citation omitted).  This Court conducts that review de novo.  *Voeller v. HSBC Card Servs., Inc.*, 2013 S.D. 50, ¶ 6, 834 N.W.2d 839, 843.

[¶26.]     Since 1995, workers' compensation insurance policies must include a case management plan.  SDCL 58-20-24.  Under ARSD 47:03:04:05(4), "[a] medical provider who is not a participating provider in the case management plan may provide medical services to an employee . . . [w]hen compensability for an injury or disability is denied by the insurer."

[¶27.]     Here, Employer/Insurer denied compensability.  In its original answer to Dittman's Petition seeking benefits associated with her referral to Dr. Corenman, Employer/Insurer alleged Dittman's petition failed to state a claim upon which relief could be granted and denied "each and every allegation in the Petition unless

specifically admitted or qualified." With respect to Dittman's claims of work-related injury and notice to Employer, Employer/Insurer "admit[ted] only that on or about February 17, 2017, Claimant *reported* to Employer that she *claimed* to have suffered an injury to her low back arising out of and in the course of employment." (Emphasis added.) Employer/Insurer claimed "that all workers' compensation benefits to which Claimant has demonstrated entitlement and of which they are aware have been paid." The initial answer can only be read as a denial by Employer/Insurer that Dittman's injury was compensable.

[¶28.] Long after Employer/Insurer denied compensability and the referral occurred, the Department allowed Employer/Insurer to amend their answer and accepted their assertion that they had never denied compensability.[3] Despite the amended answer, the fact remains that Employer/Insurer initially denied and continued to deny the compensability of Dittman's claim from the time of its original answer through the time that Dr. Vonderau made the referral and Dr. Corenman performed Dittman's surgery. As Dittman's treating physician, Dr. Vonderau could refer her to Dr. Corenman. SDCL 62-4-43. Because Employer/Insurer denied compensability of the expenses associated with Dr. Vonderau's referral to Dr. Corenman, ARSD 47:03:04:05(4) authorizes Dr. Corenman's medical services even though he was an "out-of-network provider." We

---

3. Dittman also challenges the Department's decision to allow Employer/Insurer to amend their answer to "clarify" that they had never denied compensability. Because we conclude that the position taken by Employer/Insurer in its amended answer is immaterial to the question whether compensability was denied at the time of Dr. Vonderau's referral to Dr. Corenman, we need not address this additional argument.

reverse the circuit court's decision affirming the Department's entry of summary judgment and remand for further proceedings consistent with this decision and ARSD 47:03:04:05.

### 3. Whether the Department erred by not including Dittman's bonuses when calculating her average weekly wage.

[¶29.]     The parties agree that Dittman received two bonuses worth a total of $1,000 because she accepted employment for a hard-to-fill position. Dittman argues that the Department erred when it excluded those bonuses in calculating her average weekly wage. Questions of law are reviewed de novo in workers' compensation proceedings, and "[m]ixed questions of law and fact are also fully reviewable." *Billman v. Clarke Mach., Inc.*, 2021 S.D. 18, ¶ 22, 956 N.W.2d 812, 819 (citation omitted).

[¶30.]     The average weekly wage of an employee for workers' compensation purposes is based on the employee's "earnings." SDCL 62-1-1(3). "Earnings" are defined in SDCL 62-1-1(6).[4] The primary purpose of workers' compensation is to compensate the employee fairly for her loss of income-earning ability. *Caldwell v.*

---

4.     SDCL 62-1-1(6) provides:

> "Earnings," the amount of compensation for the number of hours commonly regarded as a day's work for the employment in which the employee was working at the time of the employee's injury. It includes payment for all hours worked, including overtime hours at straight-time pay, and does not include any sum which the employer has been accustomed to pay the employee to cover any special expense entailed by the employee by the nature of the employment; wherever allowances of any character made to an employee in lieu of wages are specified as a part of the wage contract, the allowances shall be deemed a part of the employee's earnings[.]

*John Morrell & Co.*, 489 N.W.2d 353, 362 (S.D. 1992). "In computing actual earnings as the beginning point of wage-basis calculations, there should be included not only wages and salary *but anything of value received as consideration for the work*, as, for example, tips, bonuses, commissions and room and board, [which] constitut[e] real economic gain to the employee." 8 Arthur Larson et al., *Larson's Workers' Compensation Law* § 93:01[2][a] (2021) (emphasis added).

[¶31.]      Relying on Larson's principle that "earnings" should be based on value received for work performed, the Department has issued a declaratory ruling that nondiscretionary bonuses owed to an employee are included in computing the average weekly wage, while discretionary bonuses are not included. *See Declaratory Ruling re: SDCL 62-1-1(6),* 3–4 (2014). The Department reasoned that nondiscretionary bonuses include things such as "seniority pay, longevity pay, or bonuses paid out based on the claimant's having met individual performance goals." *Id.* Discretionary bonuses include one-time payments without regard to the employee's performance, including signing or hiring bonuses. *Id.*

[¶32.]      The Department determined that Dittman's bonuses were discretionary and consequently could not be used to calculate her average weekly wage. Because there was no dispute about the nature of the bonuses paid to Dittman, the Department simply analyzed those bonuses utilizing the guidance of the Department's *Declaratory Ruling re: SDCL 62-1-1(6)*. Dittman contends the analysis the Department employed in that declaratory ruling is wrong. We disagree.

[¶33.] The underlying premise of the declaratory ruling, which we conclude is sound, is that bonuses based on performed work are not discretionary and should be used in assessing the average weekly wage. *See Denim Finishers, Inc. v. Baker*, 757 S.W.2d 215, 216 (Ky. Ct. App. 1988) (holding that a bonus based on employee achieving an output standard was included in average weekly wage); *Smith v. State, Dep't of Highways*, 370 So. 2d 1295, 1296–98 (La. Ct. App. 1979) (bonus which fluctuated based on employer profitability was not part of worker's average weekly wage).

[¶34.] The bonuses paid to Dittman were designed to encourage applications for a hard-to-fill position. Although they were paid over two pay periods, they were not based on her hours worked or the quality of her work performed. Unlike an annual bonus, these two bonuses were not part of Dittman's continuing compensation plan. The bonuses were special events unrelated to Dittman's work performance, efforts, or achievements. The bonuses do not represent an amount Dittman was receiving for her hours and weeks worked. The Department's ruling regarding Dittman's bonuses was consistent with the Department's *Declaratory Ruling re: SDCL 62-1-1(6)*. The circuit court correctly affirmed the Department's ruling regarding Dittman's bonuses.

## Conclusion

[¶35.] We affirm the Department's determination that Dr. Vonderau's referral to Dr. Corenman was authorized by SDCL 62-4-43. However, we reverse the Department's grant of summary judgment denying compensation for Dr. Corenman's medical services and remand for further proceedings consistent with

this decision and ARSD 47:03:04:05.  Finally, we affirm the circuit court's determination that the Department correctly concluded that Dittman's bonus was discretionary.

[¶36.]        JENSEN, Chief Justice, and KERN, SALTER, and DEVANEY, Justices, concur.